## Bennett, et al. v. Howard, et al.

(Decided May 25, 1917.)

### Appeal from Bell Circuit Court.

1. Mines and Minerals—Lease—Unavoidable Casualty—Construction.—Under a mining lease, providing for a minimum royalty of $2,000.00 per year, but further providing "that during strikes and other unavoidable casualties over which second parties have no control, then no royalties are to become due and payable for the time the parties of the second part may close down their mines for said causes, except on coal actually mined and shipped," etc., the lessees are not entitled to any deduction from the minimum royalty for shut downs caused by the breaking down of machinery or appliances, or by the installation of new machinery or appliances.

2. Mines and Minerals—Lease—Unavoidable Casualty—Construction.—The failure or refusal of the railroad company to furnish cars for shipping coal is an unavoidable casualty, where it appears that the lessees used reasonable diligence to procure the cars.

3. **Mines and Minerals—Unavoidable Casualty—Pleading.**—In an action to recover the minimum royalty under such a lease, a pleading that merely shows so many days' delay because of "inability to get cars," or "refusal of the railroad company to furnish cars," is not sufficient. In order to show due diligence, the lessees should allege that they requested the cars in time to have enabled the railroad company, by the exercise of ordinary care, to furnish them when needed.

4. **Mines and Minerals—Lease—Unavoidable Casualty—Construction.**—Bad market conditions, preventing the lessees from selling their coal, are not unavoidable casualties within the meaning of such a lease.

J. M. ROBSION for appellants.

N. R. PATTERSON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the original appeal and reversing on the cross-appeal.

Jacob Howard, Ellen Howard and Henry Howard brought this suit against Samuel Bennett, H. B. Jones and the Black Mountain Coal Company to recover royalties on a coal mining lease alleged to be due for the years 1914 and 1915, and were awarded a judgment for $1,668.25, together with interest and costs. The defendants appeal, and plaintiffs prosecute a cross-appeal.

It appears that on January 14, 1911, plaintiffs leased a certain tract of land to the defendants, Samuel Bennett and H. B. Jones, for coal mining purposes. By section 2 of the lease the lessees agreed to pay plaintiffs a royalty of ten cents for each ton of coal of two thousand pounds weight, mined and shipped or marketed off said premises, that would go over a one and one-half inch screen; the weight thereof to be determined by the railroad weights made or accepted by the common carrier to which it was delivered for shipment, with the exception of the manufactured coke, the weights of which were to be determined by the weigh boss or other officials of the lessees whose duty it was to keep the weights. By section 3 the lessees agreed to pay a minimum royalty of $2,000.00 per year. Section 7 is as follows:

"It is agreed by the parties hereto that during strikes and other unavoidable casualties over which second parties have no control, then no royalties are to

become due and payable for the time the parties of the second part may close down their mines for said causes, except on coal actually mined and shipped, and the yearly minimum as provided for in paragraph three of this lease is to be reduced proportionately—that is, in proportion that the number of days which said mines are so suspended bears to the entire number of days in the entire year in which the suspension occurred, Sundays and holidays excepted."

By a supplemental contract executed January 19, 1914, the lessees agreed to pay a royalty of seven cents per ton on all coal mined, but this provision did not affect the minimum royalty of $2,000.00 provided by the original lease.

Defendants pleaded in substance that they were released from paying any royalties for 190 working days during the year 1914, and for 157½ working days during the year 1915, because of strikes and unavoidable casualties. Plaintiffs conceded that defendants were entitled to a deduction of two days for strikes, and defendants, on being required to make their answer more specific, specified the following as unavoidable casualties:

(1) A bad condition of the coal market and their inability to sell the coal; (2) a shut down occasioned by the installation of an electric plant; (3) a wreck on the incline; (4) freezing of the power house pipe line; (5) delay in getting engine oil which had been ordered in ample time but had gone astray and was not delivered; (6) the breaking of the drum shoe; (7) the alteration of the screens; (8) breaking down of the engine; (9) breaking down of the hoisting engine; and, (10) failure of the railroad to furnish cars in which to ship the coal.

The trial court held, in substance, that defendants were entitled to a deduction from the minimum royalty for only such delays as were caused by strikes, breaking down of the machinery or appliances, wrecks on the incline and failure of the railroad company to furnish cars, amounting in all to seventy days, and rejected their claim for rebate on account of delays growing out of all other causes.

It will be observed that section 7, *supra,* provides, in substance, that during strikes and other unavoidable casualties over which the lessees have no control no royalties are to become due and payable for the time the lessees may close down their mines for said causes, ex-

cept on coal actually mined and shipped, and that the yearly minimum is to be reduced in the proportion that the number of days during which the mines are suspended bears to the number of days in the entire year, Sundays and holidays excepted.

A "casualty" is that which happens without design or without being foreseen, and an "unavoidable casualty" is one which could not have been avoided by the exercise of reasonable diligence and skill. Hargis v. Begley, 129 Ky. 477, 112 S. W. 602, 23 L. R. A. (N. S.) 136; Ray v. Arnett, 32 R. 562, 106 S. W. 828. It is also defined as an event or accident which human prudence and sagacity cannot prevent. Welles v. Castles, 69 Mass. (3 Gray), 323. Under the lease in question three things must concur in order that the lessees may be entitled to a reduction from the minimum royalty: (1) The casualty must be unavoidable; (2) it must be one over which the lessees have no control; and, (3) it must be such as to cause the lessees to close down the mine.

We think it clear that the use of the words "other unavoidable casualties over which second parties have no control" after the word "strikes" plainly indicates that the words "unavoidable casualties" were not used in a broader sense than strikes, but embrace only such casualties as were of a like nature to strikes. In other words, the casualties must be such as were due to outside forces, or to the conduct of third parties over which the lessees have no control. Since the incline, boilers, engines and other machinery and appliances used in the operation of the mine, and the installation of an electric plant and the alteration of the screens, etc., were all under the control of the lessees, it follows that by the express terms of the lease, they are not entitled to any deduction from the minimum royalty on account of shut downs caused by the breaking of any such machinery or appliances, or by the installation of new machinery or appliances, and the trial court erred in so holding. Inasmuch, however, as railroad cars are exclusively under the control of the railroad company, we conclude that a failure or refusal of the company to furnish cars is an unavoidable casualty within the meaning of the lease, and entitles the lessees to a deduction from the minimum royalty for such time as the mines may have been shut down on that account, where it appears that the lessees used reasonable diligence to procure the cars. A

pleading that merely shows so many days' delay because of "inability to get cars," or "refusal of the railroad company to furnish cars," is not sufficient. In order to show due diligence, the lessees should allege that they requested the cars in time to have enabled the railroad company, by the exercise of ordinary care, to furnish them when needed. Since no such allegation was contained in the answer or amended answer of the defendants, and since the cause was submitted for judgment on the pleadings, we conclude that the trial court erred in allowing defendants any credit for shut downs alleged to have been caused by their inability to get cars.

Defendants' chief ground of complaint is that the trial court made no deduction because of the bad market conditions which prevented them from selling their coal. It is argued that the lease plainly contemplated not only that the coal should be mined, but shipped, and if the lessees were compelled to close down the mines because of their inability to sell the coal, this was an unavoidable casualty over which they had no control, entitling them to credit for the time lost. It is true that in the case of Givens Ex'rs v. Providence Coal Company, 22 R. 1217, the court made use of certain language, which considered independently of the facts of that case, might have a tendency to sustain defendant's position. There the lease provided for a royalty of one-fourth of one cent per bushel for every bushel of lump coal the lessee might ship and sell between January 1, 1890, and January 1, 1891. It further provided that "from and after the first day of January, 1891, the party of the second part agrees and binds himself to take out and ship and pay for not less than 500.000 bushels of coal each year at the rate of one-fourth of one cent a bushel of lump coal, and if he shall fail to take out and ship as much as 500,000 bushels, he agrees, notwithstanding such failure, to pay royalty on stated quantity: Provided, however, that should the party of the second part be prevented by any accident or casualties, without fault on his part, or by accident or circumstances not under his control, to get out and ship 500,000 bushels in any one year, then he shall, for that year, pay for only so much as he does take out and sell." It appeared that the coal was of an inferior quality and could not be sold. The court, after holding that the lessors were not entitled to recover the royalty on the full 500,000 bushels, because the contract,

as construed by the parties, required only such coal to be gotten out as could be shipped, concluded the opinion with the following language:

"If from a change in the market or a deterioration of the quality of the coal it had come about that the coal from the shaft mine could not be sold in market at all, the fact that there was a demand for this character of coal when the contract was made, which had ceased to exist, would not make it incumbent on the appellee to pay the royalty on coal for which there was no demand, and which could not be shipped at all."

The difference between the two contracts is striking. In the above case the contract, as construed by the parties, required only such coal to be gotten out as could be shipped, and required the lessee to take out and ship at least 500,000 bushels per year, unless prevented "by any accident or casualties, without fault on his part, or by accident or circumstances not under his control." In that case it could be said with propriety that the inferiority of the coal which prevented the lessee from selling it at all was an accident, casualty or circumstance not under the control of the lessee, calculated to prevent the lessee from mining and shipping the coal. The contract under consideration did not provide for the shipment of all the coal taken out, nor was it so construed by the parties. The minimum royalty clause did not obligate the lessee to mine and ship 20,000 tons per year, but to pay a royalty on that quantity of coal whether mined or not, unless the lessees were prevented from so doing by strikes and other unavoidable casualties over which they had no control.

Manifestly, there is a wide difference between "any accident or casualties, without fault on his part, or by accident or circumstances not under his control" and "strikes and other unavoidable casualties over which second parties have no control." In the one case the casualty must be unavoidable, while in the other any accident or casualty, or circumstance not under the control of the lessee, is sufficient. It follows that the case relied on does not support the defendant's contention. We must, therefore, construe the lease in question in the light of its provisions. It is a matter of common knowledge that the coal market may be good at one time and bad at another. Such changes in the market are but ordinary incidents of the business and may be expected

to occur at any time. Bad markets are the result of economic laws, and they come and go with such frequency that every business man must take them into account. Unless he is prudent enough to guard against them by contract, he necessarily takes the risk. The word "casualty" is not only used in the strict sense of something which happens without design or without being foreseen, but in ordinary usage is applied to accidents which happen suddenly and unexpectedly, and not in the usual course of events. Whether we adopt one definition or the other, it is clear, we think, that a bad market is in no sense an unavoidable casualty within the meaning of the lease in question.

Judgment affirmed on the original appeal and reversed on the cross-appeal, and cause remanded for proceedings consistent with this opinion.