## Troxell v. Beacon Coal Company

*Charles S. Evans* and *Chase & Swoope*, for plaintiff. *Shettig & Swope*, for defendant.

GRIFFITH, J., June 11, 1943. — On September 29, 1942, plaintiff confessed judgment against defendant to the above number and term in the sum of $2,175.25 upon a power of attorney contained in a coal mining lease dated April 2, 1928. The lease provided for the payment of a "minimum rental or royalty" in the sum of $500 per annum, regardless of whether coal be mined or shipped, "unless prevented by unforeseen faults in the strata, difficulties in the mines, strikes, scarcity in car supply, or other unavoidable causes". The liquidation filed by plaintiff with her confession shows that between April 1, 1928, and April 1, 1942, there was un-

paid minimum royalty in the sum of $1,722.21, and the difference between this sum and the amount for which judgment was confessed is by way of interest.

The lease likewise provided that the lessee should pay royalty for coal mined and shipped on the basis of seven cents per gross ton, three fourths of which was to be paid to the lessor, who was the owner of an undivided three-fourths interest in the coal. The lease was to continue until all the marketable coal was exhausted.

On November 9, 1942, defendant filed a petition for a rule to show cause why the judgment should not be opened and defendant let into a defense. Plaintiff filed an answer to the petition, in which she admitted the averments of fact for the purpose of argument, and contended that the facts averred in the petition should not relieve defendant from the payment of the minimum rental and are, therefore, not cause for the opening of the judgment.

The eighth paragraph of the petition sets forth several reasons why defendant believes judgment should be opened. However, in its brief filed subsequent to the argument, and at the oral argument, defendant relies upon but one defense, viz, whether under the language of the lease above quoted inability to market the coal may be construed as an unavoidable cause. Webster's Dictionary defines "unavoidable" as "not avoidable; incapable of being shunned or prevented; inevitable." In order to open the judgment, therefore, it would be necessary for us to find that it was wholly impossible for defendant to market the coal contained in its lease from plaintiff.

It is true that a portion of the language used by the defendant in paragraph 8 of the petition to open the judgment, standing alone, might be construed as an averment that it was wholly impossible to find a market for this coal; for example, the following expression is used:

"During all of the period covered by the plaintiff's claim, the defendant has diligently sought to find a mar-

ket . . . and has sold all of the coal produced therefrom insofar as such market was obtainable. Such market for said coal did not exist during a great portion of the time covered by said claim, and during substantial periods the defendant was utterly unable to sell any of the coal so produced."

Had defendant's petition stopped there, we might have felt that it had averred a wholly unavoidable cause for failure to mine and remove coal, but defendant continued and gave examples of the difficulties encountered in marketing the coal. As plaintiff points out, a comparison of these examples with the liquidation filed with the confession of judgment shows that for the greater part of the time for which unpaid minimum royalty is claimed defendant was as a matter of fact selling or able to sell the coal from plaintiff's lease.

Reading the petition to open the judgment as a whole, we do not understand that its averments amount to a statement that defendant could not sell this coal under any circumstances, even without profit or at a loss. Had defendant been in a position to aver that it could not dispose of this coal in any manner, even at a loss, then perhaps it might have been relieved as having been prevented from paying the minimum by an unavoidable cause. If the failure to market coal on the part of the lessee at a profit is to be construed as an unavoidable cause, then we would be compelled to arrive at the inequitable result of excusing the lessee from paying the minimum royalty or rental due to the fact that it cannot mine coal at a profit. At the same time the lessor, of course, would be compelled to pay the taxes assessed upon the coal and would be receiving no income whatever, while lessee would be enabled to sit back and wait for a profitable market.

It will also be noted that the lease specifically provides that where the minimum amount of coal is not mined and shipped in a given year the lessee has the right to credit on coal taken out in subsequent years in

excess of the minimum the amount paid in a given year by way of minimum for coal not mined. There is, therefore, no eventual loss whatever to the lessee in being compelled to pay this minimum. As was said by the Superior Court in Greenough et al. v. Colonial Colliery Co., 132 Pa. Superior Ct. 270, 275:

"Minimum royalty payments in coal leases have been interpreted by our Supreme Court as being in the nature of a penalty or a liquidated rental for property, whether or not the coal is mined, and they may not be applied to payment for the coal remaining in place unless expressly so provided."

The burden is, therefore, on the lessee to take this case out of the usual rule. We do not believe it has done so. The only case cited by either party is the case of Bennett et al. v. Howard et al., 175 Ky. 797, 195 S. W. 117. Our decision is in accord with the rule announced in that case, viz, that inability to sell coal mined is not within the provision of a mining lease relieving the lessee from payment of the minimum royalties during strikes and other unavoidable casualties over which the lessee has no control. To hold otherwise might not entirely destroy the effect of a minimum royalty provision in a coal mining lease, as suggested by plaintiff, but it would make it mean very little. Over the past 25 years there has been a great fluctuation in the coal market. If the lessor were required to forego her minimum rental or royalty and at the same time compelled to pay taxes on the coal during the periods when bad markets prevailed, she would be placed in a situation where the lease might be a liability instead of an asset to her.

An application to open a judgment is addressed to the sound discretion of the court, and the court should be governed by equitable rules. From what we have already said, we are of the opinion that in this instance it would be inequitable to plaintiff to permit the opening of this judgment.

We, therefore, enter the following

*Decree*

And now, June 11, 1943, after argument and due consideration, the rule heretofore granted upon plaintiff to show cause why the above-stated judgment should not be opened and defendant let into a defense is hereby discharged at the cost of petitioner.