# Millard, Exr., et al., v. Delaware, Lackawanna & Western Railroad Co.

*Contracts—Coal lease—Mines and mining—Construction—Liability for taxes—Implied contracts—Money paid for another's use —Voluntary and involuntary payments—Full knowledge of facts— Dual agent.*

1. A coal lease demising and letting "all the merchantable anthracite coal in, upon or under" certain described tracts, and

further providing that the lease was intended to include "all the veins of coal on said premises which are of such thickness and quality as will after paying for mining and transporting the same to the New York market, yield a profit to the said party of the second part equal to the average profit made for the time being by the Delaware, Lackawanna and Western Railroad Company upon the coal by said company mined in the townships of Blakely and Providence in said County of Luzerne" constitutes a sale of the coal in place and operates as a severance of the same from the surface, thereby creating a divided ownership between the surface and the minerals.

2. In such case the lessee, who becomes the owner of the coal in place, is chargeable with taxes on said coal from the date of the sale, unless otherwise agreed. As between vendor and vendee, the owner, legal or equitable, of real estate is liable for taxes assessed subsequent to the sale.

3. Where in such case the lease covered two tracts of land, a larger and a smaller tract, the mere fact that the lease provided that the lessee should pay all taxes assessed on the larger tract, and also all taxes assessed on the works or improvements made under the lease on other land embraced in the lease, and all United States Government or State imposts or duties imposed on the coal mined and sent away under the lease, and was silent as to the payment of taxes on coal in place in the smaller tract, does not overcome the presumption of law that the taxes on coal underlying such smaller tract are to be paid by the lessee as owner thereof. The principle expressio unius est exclusio alterius does not in such case apply, especially as the extensive rights acquired by the lessee in the larger tract afforded a reason for the provision in the agreement that the lessee should pay all taxes on that tract, including those assessed against the surface as well as the coal.

4. In such case the fact that the lessors had without objection paid the taxes on the coal underlying the smaller tract for some years, does not justify the court in construing the lease contrary to its clear and unequivocal terms. It is only when a writing is equivocal or obscure that the court may interpret it in accordance with the conduct of the parties.

5. Where in such case the lessors of the coal land, voluntarily for some years, with a full knowledge of the facts, paid taxes on the smaller tract, they cannot recover from the lessee the taxes so paid, on the theory of an implied contract to repay the same. Where, however, the lessors discovered that, under the terms of the lease, they were not required to pay the taxes on the smaller tract and protested against further doing so, but nevertheless paid

the same upon refusal of defendant lessee to pay, in order to save penalties and to avoid the risk of seizure of their property, the money thus paid was not paid voluntarily but under compulsion and may be recovered from the defendant.

6. Where in such case it appeared that the knowledge of the plaintiffs of all the facts during the period when they paid the taxes voluntarily had been acquired through an agent, who had acted for both parties in good faith, believing that under the proper construction of the lease the plaintiffs were responsible for the taxes, it cannot be successfully claimed that the plaintiffs paid without knowledge of the facts, merely because the agent acted for both parties, particularly where it appears that they did not except to a conclusion of law found by the court, to the effect that the payments were voluntary on the part of the agent acting in good faith, without collusion, and within the scope of his authority, and that the plaintiffs were bound by such payments.

Argued Feb. 26, 1913. Appeals, Nos. 5 and 17, Jan. T., 1913, by plaintiffs and defendant, from judgment of C. P. Lackawanna Co., March T., 1908, No. 1016, for plaintiffs in case of Stephen C. Millard, Executor of the Estate of Abel Bennett; Stephen C. Millard, Executor, to the use of Chas. P. Bennett, Helen B. Millard, Mabel McKelway, Florence Bennett and Frederick S. Bennett; James W. Manier and Helen B. Millard, Executors of the Estate of Mary A. Johnson, and James W. Manier and James W. Johnson, Committee of the Estate of James E. Johnson v. The Delaware, Lackawanna and Western Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit to recover money paid by plaintiffs for defendant's use. Before NEWCOMB, J.

The opinion of the Supreme Court states the facts.

Plaintiffs offered in evidence a coal lease covering two tracts described therein. The lease provided, inter alia, that the parties of the first part having demised, leased and to mine let, and by these presents do demise, lease and to mine let unto the said John J. Phelps, his heirs, executors, administrators and assigns, all the merchant-

able anthracite coal in, upon or under all the following described tracts, pieces or parcels of land, situate in the townships of Blakely and Providence, in the County of Luzerne and State of Pennsylvania."

A subsequent clause of the lease was as follows:

"And it is understood and agreed that the parties hereto intend to embrace under the provisions of this lease all the veins of coal on said premises which are of such thickness and quality as will after paying for mining and transporting the same to the New York market, yield a profit to the said party of the second part equal to the average profit made for the time then being by the Delaware, Lackawanna and Western Railroad Company upon the coal by said company mined in the townships of Blakely and Providence in said County of Luzerne and sent to and sold in said market. And that all veins which are not of such sufficient thickness or of such merchantable quality as that they can be thus profitably worked by the said party of the second part, his heirs, executors, administrators or assigns are not to be considered embraced in this lease nor required to be worked under the same."

The case was tried before the court without a jury, under the Act of April 23, 1874, P. L. 109. The court entered judgment for the plaintiffs for $8,406.06. Both parties appealed.

*Errors assigned* in both appeals were rulings on exceptions and the judgment of the court.

*H. A. Knapp,* of *Warren, Knapp & O'Malley,* and *W. L. Hill,* with them *D. R. Reese,* for The Delaware, Lackawanna & Western R. R. Co., appellant.—The coal lease did not pass to the lessee a taxable estate in the land, because the coal to be mined under the lease was not designated and could not at the time be designated, but was left to be determined in the future by a standard which is itself not fixed, but is variable and subject to

fluctuation from time to time: Gallagher v. Hicks, 216 Pa. 243; Genet v. D. & H. Canal Co., 136 N. Y. 593 (32 N. E. Repr. 1078).

The fair construction of the tax clause in the coal lease is that the lessee was not to pay any taxes on the 133 acre tract (except on the improvements); because the agreement of the parties was manifestly intended to cover the entire subject of taxes: Mt. Pleasant Coal Co. v. D. L. & W. R. R. Co., 200 Pa. 434; Republic Iron Works v. Burgwin, 139 Pa. 439.

There was no compulsion because the payments were made without even a demand: Peebles v. Pittsburgh, 101 Pa. 304; Harvey v. Girard National Bank, 119 Pa. 212; Shenango Furnace Co. v. Fairfield Twp., 229 Pa. 357; Union Pacific R. R. Co. v. Commissioners, 98 U. S. 541; Taylor v. Philadelphia Board of Health, 31 Pa. 73.

There was no compulsion because any personal liability of the plaintiffs, if it existed, resulted from their own failure to remove it: Guthrie v. Pittsburgh Dry Goods Co., 47 Pa. Superior Ct. 384.

There was no compulsion because there was no jeopardy of any estate of the plaintiffs: Union Ins. Co. v. Allegheny City, 101 Pa. 250; Taylor v. Philadelphia Board of Health, 31 Pa. 73.

There was no protest, which is necessary even though there be compulsion but which cannot supply the place of compulsion and is ineffectual except where there is compulsion; and by not protesting the plaintiffs waived any right of recovery: Shenango Furnace Co. v. Fairfield Township, 229 Pa. 357; Harvey v. Girard National Bank, 119 Pa. 212; Peebles v. Pittsburgh, 101 Pa. 304.

*W. J. Torrey* and *John P. Kelly,* for Stephen C. Millard, Exr., et al., appellees.—A lessor in a coal lease has such a title in the coal that it is subject to levy and sale by the sheriff, carrying with it the right to royalties: Denniston v. Haddock, 200 Pa. 426; Coolbaugh v. Lehigh & Wilkes-Barre Coal Co., 213 Pa. 28.

It is everywhere the duty of a vendee of real estate under articles, who is in possession, even before he receives the legal title, and while he has only a purchaser's equity, to pay the taxes: Gheen v. Harris, 170 Pa. 644; Mangold v. Furnace Co., 31 Pa. Superior Ct. 275; Evans' Est., 2 Woodward (Pa.) 166.

Except for an express stipulation, the lessee of mineral rights, even with such broad rights in the surface as these, does not have to pay the taxes on the surface: Kitchen v. Smith, 101 Pa. 452; Mattson v. Oliver, 2 Leg. Opin. 48; Del., Lackawanna & Western R. R. Co. v. Sanderson, 109 Pa. 583.

The owner of an interest in land which would be wiped out by valid tax sale, is not forced to wait until he has made an unsuccessful demand upon the party primarily liable for the taxes and thereby to allow penalty and interest for the delinquency to accumulate against him, but he can pay forthwith upon the date when the taxes are due and recover the same from the party primarily liable: Iron City Tool Works v. Long, 7 Atlantic Reporter 82; Cole v. Wright, 70 Ind. 179; Kortright's v. Cady, 23 Barb. (N. Y.) 490; Mangold v. Isabella Furnace Co., 31 Pa. Superior Court, 275; Hogg v. Longstreth, 97 Pa. 255; King v. Mt. Vernon Bldg. Association, 106 Pa. 165; Caldwell v. Moore, 11 Pa. 58.

*W. J. Torrey* and *John P. Kelly,* for Stephen C. Millard, Exr., et al., appellants.—The plaintiffs are not bound by the knowledge and acts of their agent, for the reason that the agent acted for both plaintiffs and defendant whose interests were adverse, and the plaintiffs were not informed of the facts within the agent's knowledge as a result of which he benefited the defendant at the plaintiffs' expense: Everhart v. Searle, 71 Pa. 256; Atlee v. Fink, 75 Mo. 100; Addison v. Wanamaker, 185 Pa. 536; Wilkinson v. McCullough, 196 Pa. 205; Cannell v. Smith, 142 Pa. 25; Rice v. Davis, 136 Pa. 439; Wilson v. Second Nat. Bank of Pittsburgh, 7 Atl. Repr. 145;

Gunster v. Illuminating Heat & Power Co., 181 Pa. 327; Musser .v. Hyde, 2 W. & S. 314; Pine Mountain Coal & Iron Co., et al., v. Bailey, 94 Fed. Repr. 258; Bunton v. Palm, 9 S. W. Repr. 182; Pennoyer v. Willis, 26 Oregon 1 (36 Pac. Repr. 568) ; Brown v. Campbell, 1 S. & R. 176.

Even though the acts and knowledge of the agent bound the plaintiffs, still the plaintiffs protected their interest in the land by paying the taxes and therefore the payments were not voluntary: Webber v. Vogel, 189 Pa. 156; Mangold v. Isabella Furnace Co., 31 Pa. Superior Ct. 275; Com. Nat. Bank v. Shoemaker, 13 W. N. C. 255; Hogg v. Longstreth, 97 Pa. 255; King v. Mt. Vernon Bldg. Assn., 106 Pa. 156.

*H. A. Knapp,* of *Warren, Knapp & O'Malley,* and *W. L. Hill,* with them *D. R. Reese,* for The Delaware, Lackawanna & Western Railroad Co., appellee.

OPINION BY MR. JUSTICE MESTREZAT, March 31, 1913:

These two appeals are from the same judgment and may be considered and disposed of together. The case was tried before the court below without a jury under the Act of April 23, 1874, P. L. 109, and, in an exhaustive opinion dealing with both facts and law, the learned trial judge has clearly vindicated the correctness of his conclusions.

. The action was assumpsit to recover moneys expended in the years 1902 to 1906 inclusive by the plaintiffs in payment of taxes assessed against a tract of coal land containing 133 acres in Lackawanna County, held by the defendant company under a mining lease from parties now represented by the plaintiffs. The suit was instituted on the theory that under the lease the taxes were payable by the defendant company, and that they were paid by the plaintiffs under circumstances which justify the latter in demanding their repayment. The learned court below held that for the years 1902 and 1903 the taxes were voluntarily paid by the plaintiffs

with full knowledge of all the facts, and that, there-. fore, there could be no recovery for those years, but held that for the three following years the moneys were paid under compulsion and protest upon the defendant's refusal to pay, in order to avoid not only the risk of penalties, but also seizure of property to the peril of their interest in the royalties and of their estate in the nature of a reversion, and hence they were not voluntary payments and could be recovered in this action.

The lease in question embraced two tracts of coal, one containing 295 acres, the other 133 acres. The taxes in dispute are those assessed against the latter or smaller tract. Without referring specifically to the terms of the lease, we think its language brings it within our cases which hold that it is a sale of coal in place and operate as a severance of the coal from the surface, thereby creating a divided ownership between the sur- face and the minerals. There is no substantial differ- ence between the lease in the present case and those in Delaware, Lackawanna and Western Railroad Com- pany v. Sanderson, 109 Pa. 583, and kindred cases. It follows that the defendant company being the owner of the minerals was chargeable with the taxes unless it was otherwise agreed in the lease. The only stipulation in the lease bearing on the question is as follows: "And it is further agreed that the said party of the second part, his heirs, executors, administrators or assigns shall pay all taxes assessed on the tract owned by the Central Coal Company, all taxes assessed on the works or improve- ments erected or made under this lease on the other lands embraced in this lease, and all United States Gov- ernment or State imposts or duties imposed or that may be imposed on the coal mined and sent away under this lease." The tract owned by the Central Coal Company was the 295 acre tract on which the lessee was to pay all the taxes but, it will be observed, that the clause is silent as to payment of taxes on the coal in place in the other or smaller tract. It is contended, however, by the

defendant that the clause shows on its face that it was intended to cover the whole subject of taxes, and that therein lies the distinction between the lease in the present case and those in kindred cases in which no mention is made of taxes and it was held the lessee was liable to pay them. The defendant to sustain its position also invokes the principle expressio unius est exclusio alterius, because, as it alleges, an open-minded reading of the clause in the light of the situation of the parties at the time shows there was an intention to cover the whole subject of taxes. This argument is not convincing. As between vendor and vendee the owner, legal or equitable, of real estate, unless otherwise stipulated, is liable for taxes assessed subsequent to the sale. This is too well settled to need the citation of authorities to support it. The title passes and whether it is legal or equitable the holder thereof is the owner and must pay the taxes. As noted above, the lease is silent as to the taxes on the coal in the smaller tract, and, therefore, they must be met by the lessee or vendee unless relieved by the matters invoked by the defendant. Those matters, however, are not sufficient to impose liability on the lessors against the plain language of the lease which fails to disclose any such intention. The extensive rights acquired by the lessee in the larger tract may have been the reason for the provision in the agreement that the lessee should pay "all the taxes assessed on the tract," which included both surface and coal, as it is clear that without such a stipulation and as between the lessors and lessee, the latter would not have been liable for the taxes assessed against the surface. The fact that provision was made for payment of all taxes and not for the taxes only on the surface of the larger tract is not controlling in the construction of the clause as to the taxes on the smaller tract of coal. The parties may have thought that to make the language less general as to the taxes on the larger tract might raise a doubt as to the liability of the lessee for

the taxes on the coal in that tract. The clause imposes payment of taxes on the lessee on the works or improvements erected by him on the surface overlying the smaller tract of coal which was necessary to relieve the owners of the surface who would otherwise be liable. No provision was necessary as to the coal unless it was the intention of the parties to impose the burden of taxation on the lessors. That no stipulation imposing the taxes on the lessors was inserted in the lease clearly indicates that it was not the intention to shift responsibility for the taxes from the owner where the law placed it. In the absence of any ambiguity in the provision of the lease relative to the taxes on the coal in the smaller tract, we must enforce the instrument according to its plain language. If it be conceded that the plaintiffs paid the taxes for many years, the fact would not justify the court in construing the lease contrary to its clear and unequivocal terms. It is only when the writing is equivocal or obscure that the court may interpret it in accordance with the conduct of the parties. This rule of construction is only applicable where the language employed by the parties in stating their agreement is of doubtful signification, and is not permissible where the language is so plain that it does not need construction. The maxim invoked by the defendant company cannot aid it under the facts of this case.

The defendant further contends that there can be no recovery for the taxes of 1904 to 1906 because the payment of the taxes was purely voluntary, as they were made by the plaintiffs without compulsion or even on demand by the taxing officers. Neither the facts nor the law sustains this position. In a letter dated December 30, 1904, from defendant's superintendent in reply to plaintiffs' request that the defendant pay the taxes, the superintendent refused to pay them saying: "We fail to see wherein we are required to pay the taxes on this coal, as the lease contains a distinct clause providing for the payment of all taxes on the coal by the

lessors, and we believe we are justified in the position we have taken in refusing to pay the taxes on this land, which is the only position we can take under the circumstances." The plaintiffs endeavored unsuccessfully to have the taxing authorities transfer the assessments to the defendant company. They tried without effect to have the defendant pay the taxes. By advice of counsel, the plaintiffs paid the taxes for the years 1904 to 1906 at the end of each year under protest to save penalties and avoid the risk of seizure of property for collection. Payment by defendant was refused. These facts were found by the court. In disposing of this feature of the case, the learned judge correctly said: "But, whether so or not, they (plaintiffs) had an interest that was jeopardized, and on grounds of ordinary prudence they were justified in protecting it. They had to pay or run the risk of disseisin. It is with neither force nor good grace that after being taken at its word defendant now urges that payment in advance of a levy was gratuitous. If they had no right to save themselves from the risk of losing their property, from penalties and costs, it would be difficult to say what, if any, rights they did have." Under the circumstances, the plaintiffs were justified in paying the taxes for the years in question. This case must be distinguished from one where an attempt is made by the party paying the tax to recover it back from the taxing authorities. There, if taxes are voluntarily paid to the public authorities without duress or threats or misstatements by any public officer, and without any protest by the party paying them or notice of an intention to reclaim any part of the sum paid, such taxes cannot be recovered back: Shenango Furnace Company v. Fairfield Township, 229 Pa. 357. Here, the contest is not between the party paying and the taxing authorities, but between the owner whose duty it was to pay primarily and the party who was compelled to pay the taxes to relieve himself from liability and to protect his own interests. Under these circumstances, assumpsit

will lie to recover the amount from one who should have made payment: Hogg v. Longstreth, 97 Pa. 255; Miles v. Canal Company, 140 Pa. 623; Mangold v. Isabelle Furnace Company, 31 Pa. Superior Ct. 275.

The court declined to permit the plaintiffs to recover for moneys paid by them in discharge of the taxes for the years 1902 and 1903 on the ground that the payments were voluntary and made with a full knowledge of the facts. By the findings of the court, it appears that Mr. Millard, one of the plaintiffs, took charge of the property in 1899 and put it in the hands of John R. Wilson, an attorney, whom he knew to be in the regular employ of the defendant company. Wilson then had charge of all matters pertaining to the defendant's taxes in its mining department. He occupied much the same position towards the plaintiffs. He was authorized to examine their assessments, to see that their property was duly assessed and that none was omitted or included that did not belong to them; and in general to do whatever was necessary in the adjustment of their taxes and to advise Millard of the amount required to pay the taxes and to return the vouchers to Millard when paid. It is conceded that Wilson was attentive and served both parties in good faith. He paid the plaintiffs' taxes in person from 1899 to 1903. He knew the valuation covered both coal and surface of the smaller tract, and mentioned the matter to defendant's engineer who gave him a copy of the tax clause of the lease and told him the plaintiffs, under the lease, had to pay the taxes. Wilson consulted Mr. Storrs, the former head of the defendant's mining department and a close and confidential friend of Mr. Millard and the latter's agent for the sale of surface lots, who told Wilson that was the construction put on the lease by Judge JESSUP. Thereafter, Wilson assumed that construction of the lease was correct and paid the taxes without mentioning the matter to Millard.

The plaintiffs have not excepted to the findings of

fact. The first assignment of error which raised the only question to be disposed of on the plaintiffs' appeal is that the court erred in overruling the plaintiffs' first exception to the court's seventh conclusion of law which is as follows: "The payment for 1902 and 1903 having been made by plaintiffs' agent with full knowledge, it must be deemed to have been with their knowledge. They were voluntary payments on the part of the agent acting in good faith and without collusion within the scope of his authority. The plaintiffs are bound by such payments. There is nothing in their agent's relation with defendant to relieve them from the prima facie effect of his act. Hence for those years they cannot recover."

The plaintiffs contend that they are not bound by the knowledge of their agent because he acted for both parties and they were not informed as to the facts within his knowledge. But under the conceded facts of the case this contention is without merit. Wilson acted for the plaintiffs who knew that he was the agent of the defendant company in looking after its tax matters. His good faith towards both parties is admitted. He knew that both coal and surface of the smaller tract were assessed to the plaintiffs and that he was paying taxes on both for the plaintiffs. Snyder, defendant's employee, gave Wilson a copy of the tax lease, and after a conference with Mr. Storrs, Wilson concluded the taxes were payable by the plaintiffs, and he paid them from 1899 to 1903. There was no collusion between Wilson and the defendant's officers, and in paying the taxes for plaintiffs, he acted on his own judgment as to their liability under the lease. Storrs, with whom he conferred, while a former employee of the defendant company, was at that time a close and intimate friend of Mr. Millard and was his agent in selling surface lots over this coal. The taxes for the two years in question were, therefore, paid by the plaintiffs' agent who knew all the facts and made the payment in good faith with-

out collusion with or at the request of the defendant and on his own judgment that the plaintiffs were liable under the contract. There is nothing in the case to show that Wilson did not act on his own initiative in paying the taxes for the plaintiffs or did not believe that they were legally responsible for the taxes. There is no fact in the case that raises the presumption that he did not believe he was acting in the interests of his principals, the plaintiffs. The latter were, therefore, bound by the acts of their agent and his knowledge of the facts is their knowledge. The payment of the taxes was made by the plaintiffs with full knowledge of all the facts and was voluntary, hence, they cannot be recovered in this action.

It is argued by plaintiffs that if it be conceded they were bound by the acts and knowledge of their agent, they protected their interest in the land by paying the taxes and, therefore, the payments were not voluntary. But they were not required to pay the taxes on the defendant's interest in the coal for the purpose of protecting their own interests unless the defendant refused to pay. As between the plaintiffs and the defendant company the latter was legally liable for the taxes. Without giving the defendant an opportunity to determine its liability for the taxes and to pay them, payment by the plaintiffs was intrusive and without authority and, hence, was a voluntary payment. That the defendant subsequently declined to pay the taxes on the ground that it was relieved by the contract does not show that it would not have paid them if demand had been made at that time. We cannot assume it would not have performed a legal duty, and the plaintiffs should have given it an opportunity to do so.

The judgment is affirmed.