# Shoemaker, Trustee, Appellant, *v.* Mt. Lookout Coal Co.

*Mines and mining—Lease—Royalties—Construction of lease.*

1. Where a mining lease constituting a sale of coal in place provides payment of an annual minimum royalty by the lessees, and the royalty rate varies according to the sale price of the coal, and the lessees are given the right, if they have paid for more coal in any one year than they have mined, to mine "a quantity equal to such excess of payment in any year thereafter without payment therefor," the purpose being "to allow the lessees to mine all the coal they have paid for under the lease," the contract will be construed to mean that when the lessees have paid for the minimum tonnage of coal, at the then royalty rate, it becomes their property, and if it was not all mined in the year, they have the right to mine a quantity equal to the amount purchased by them without any further payment.

*Contract — Construction — Conduct of parties — External construction.*

2. It is only when a writing is equivocal or obscure that the court may interpret it in accordance with the conduct of the parties.

3. The court will not apply to the construction of a mining lease, alleged conduct of the parties, where such conduct does not amount to external construction, but is in fact no more than the unauthorized obiter dictum of the lessee's bookkeeper, disclosed by pure surplusage in statements otherwise contractually complete and not made practical at any time by incorporation in any settlement.

Argued April 11, 1921.   Appeal, No. 398, Jan. T., 1921, by plaintiff, from decree of C. P. Luzerne Co., May T., 1916, No. 11, dismissing bill in equity, in case of Jacob I. Shoemaker, Trustee, v. Mt. Lookout Coal Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.   Affirmed.

Bill in equity for accounting of royalties under a coal lease.   Before FULLER, P. J.

The opinion of the Supreme Court states the facts.

The court entered a decree dismissing the bill. Plaintiff appealed.

*Error assigned* was decree, quoting it.

*Wm. S. McLean, Jr.,* and *Edwin Shortz, Jr.,* with them *Wm. S. McLean* and *George R. McLean,* for appellant.—A provision contained in a contract which is capable of two or more meanings should be construed most strongly against the person whose undertaking it is: Bole v. Ins. Co., 159 Pa. 53; Hook v. Welch, 67 Pa. Superior Ct. 297.

The intention of the parties as expressed in the lease or contract cannot be changed or defeated by the doctrine that it was a sale of the coal: Woodward v. R. R. Co., 121 Pa. 344; Buhl v. Thompson, 3 Penny. 267; Timlin v. Brown, 158 Pa. 606; Lehigh & Wilkes-Barre Coal Co. v. Wright, 177 Pa. 387.

Appellant's interpretation of the lease is supported by a judicial decision given in a former suit between the same parties: Shoemaker v. Coal Co., 177 Pa. 405.

Where the parties have interpreted the contract themselves and acted upon such interpretation, the court will regard it as the proper one and enforce it accordingly: Lehigh Valley Coal Co. v. Searle, 248 Pa. 385; McMillin v. Titus, 222 Pa. 500; People's Nat. Gas Co. v. Braddock Wire Co., 155 Pa. 22; McKeever v. Coal Co., 219 Pa. 234; Kaul v. Weed, 203 Pa. 586.

*John F. Kelly,* of *O'Brien & Kelly,* with him *John R. Wilson* and *Knapp, O'Malley, Hill & Harris,* for appellee.—An interpretation will not be given to one part of a contract which will annul another part of it, or produce absurd results: Tustin v. Coal & Iron Co., 250 Pa. 425.

OPINION BY MR. JUSTICE SCHAFFER, May 2, 1921:

Plaintiff and defendant's assignors entered into a lease of the coal underlying a tract of land in Luzerne County, the term of which was "such period of time as shall be necessary to mine and remove all of the merchantable coal from......said lands." Both parties before us agree this constituted a sale of the coal in place, and title to it vested in the lessees, when the lease was executed and delivered: Sanderson v. City of Scranton, 105 Pa. 469; Delaware, Lackawanna & Western R. R. Co. v. Sanderson, 109 Pa. 583; Millard v. Delaware, Lackawanna & Western R. R. Co., 240 Pa. 234.

A dispute has arisen concerning the amount of royalty required to be paid, which was resolved by the court below in defendant's favor, and plaintiff, lessor, has appealed, urging on us that the determination there reached was erroneous, that by the express terms of the lease and by the construction the parties placed on it, appellant's claim for additional royalty should be upheld.

As to the payment of royalties, it is provided the lessees shall pay "for all coal mined, taken out and disposed of, above the size of pea coal, twenty-five cents per ton...... when such coal sells at an average of two dollars per ton, or less, at the breaker; and when the said coal shall sell at the breaker at more than two dollars per ton then the amount of royalty shall, for such time, be twenty per cent on the amount it shall sell for in excess of two dollars per ton, in addition to the said sum of twenty-five cents per ton." It was covenanted that the lessees would pay the royalty for one hundred thousand tons for the year commencing April 1, 1890, and for and during every year thereafter for not less than that amount and as much more as should be mined, subject to the following conditions: "Should the lessees pay for more coal in any year aforesaid than they have mined and taken away from said lands, they shall have the right to mine and take away a *quantity equal to such excess of payment* in any year thereafter without pay-

ment therefor, and if in any year more than the aforesaid yearly quantity of coal is mined and paid for, the excess shall apply upon and go to make up any deficiency in the quantity to be mined and paid for in any subsequent year; the purpose and intention of this provision being to allow the said lessees to mine and take out *all the coal they have paid for under this lease,* and that they shall fully account and pay for all the coal they mine and take out, but in no case is there to be less than the minimum amount hereinbefore specified paid for yearly under the terms hereof, nor at a less rate than twenty-five cents per ton."

The appellant contends that the lessees must pay for the portion of the minimum one hundred thousand tons, not mined and taken out in any year, the royalty rate for that year, and later, when the coal is actually removed, must make a second payment for the same coal, if the royalty rate for the year when the coal is actually mined is higher than it was in the year when the one hundred thousand tons minimum was paid for at the then royalty rate.

The touchstone to apply to the solution of the problem we are called upon to consider, is the legal principle heretofore mentioned; under it, the coal was sold to the lessees and it became their property when they or their assignee paid for it, just as absolutely as would the surface had it been the subject of the grant. Carrying in mind the principle of sale of the coal in place, the lease by its terms clearly and unequivocally provides what royalty shall be paid as the coal is acquired from time to time. It was covenanted that the lessees should pay for a minimum of one hundred thousand tons a year; as the transaction was a sale, when this minimum was paid for, title to that amount of coal vested in the lessees, and necessarily at the price paid for it, which was fixed at either twenty-five cents per ton, or by the price of coal at the time, but at whatever rate the royalty was paid, when paid, the number of tons then paid for belonged to

the lessees. If the lessees should pay in any year for more coal than they mined, the payment at the minimum rate, or at a higher rate, if the increased selling price put up the royalty, vested the coal so paid for in them, and no further royalty payments were due upon it; being their coal, lessees would have the right "to mine it and take it away." As it was defendant's coal, because paid for, the phrase "they shall have the right to mine and take away a quantity equal to such excess of payment" necessarily means a quantity equal to the amount purchased by them by the payment of the royalty due at the time it was paid, and without any further payment. That this was the clear intent of the parties is shown by a further clause in the contract, where, recapitulating the effect of the provisions in the lease as to payment, they say, "the purpose and intention of this provision being to allow the said lessees to mine and take out *all the coal they have paid for under this lease."*

If it were necessary to fortify the conclusion heretofore stated, material to do so could be found in the nineteenth article of the lease, which provides "At any time that the said lessees *may have paid for* as much coal *that they have not mined,* as in their opinion still remains in said premises unmined, and capable of being mined, the said lessees may notify the lessor to choose a mining engineer, who, with the mining engineer of the lessees shall select a third mining engineer disinterested in the result, and said three engineers shall thereupon make the necessary examinations. for determining the amount of coal still on the property by actual examination and testing of all the veins......and if they, the said engineers, or a majority of them, shall be of the opinion that all of said coal on said land and property hereby leased, capable of being mined under the terms of this lease, has been paid for, the said lessees shall not thereafter be required to make further payments on account of coal mined, or to be mined, until they shall have mined out the quantity for which they have paid, and there-

after the said lessees shall only be liable to pay for coal mined in excess of the amount already paid for." It is plain that the engineers selected to make the calculation of the amount of coal paid for, could not determine the tonnage unless the factor of amount paid for was then fixed by royalty already paid. If the royalty to be paid had not been fixed, the number of tons paid for could not be arrived at in advance of the mining, because the price could not be determined until then, so that this clause would become unworkable if appellant's construction of the contract should be adopted.

Appellant's further proposition is, that the parties have established the meaning of the contract on the basis he now contends for by their course of conduct in certain years of the mining. The learned court below disposed of this contention by its finding that "the conduct in this case did not amount to external construction, in fact it amounted to no more than the unauthorized obiter dictum of the [defendant's] bookkeeper, disclosed by pure surplusage in statements otherwise contractually complete and not made practical at any time by incorporation in any settlement." Our examination of the testimony convinces us that this correctly disposes of appellant's second contention; however, it is only when a writing is equivocal or obscure that the court may interpret it in accordance with the conduct of the parties (Millard v. Delaware, Lackawanna & Western R. R. Co., 240 Pa. 234); and as this contract was not equivocal or obscure, the conduct of the parties could not alter its plain terms.

The decree of the learned court below dismissing the bill is affirmed at appellant's cost.