# Mount Lookout Coal Co., Appellant, v. Schooley et al.

*Contract — Construction — Continuing agreement — Ineffective provision—Equity.*

1. Where by the action of one of the parties a provision in a continuing agreement, which has been partly executed, becomes ineffective, every other clause relating thereto and depending thereon, necessarily falls with it.

2. Where, by the action of one of the parties, a subordinate provision in a contract becomes ineffective, a court of equity will enforce the paramount purposes thereof, so far as this can be done.

*Mines and mining—Coal lease—Minimum royalty—Arbitration —Engineers—Injunction—Equity Rule 71—Assessors in equity.*

3. Where a coal lease provides that a payment of a minimum royalty shall continue until engineers selected by the parties have

determined that all the coal under the tract has been thus paid for, and one of the parties revokes the arbitration clause, he cannot, under penalty of a forfeiture of the lease, compel the lessee to pay the minimum royalty until a court of equity determines whether or not all the underlying coal has been thus paid for.

4. Under such circumstances, if a prima facie case is made out, an injunction, preventing forfeiture of the lease, will be granted upon such terms as will protect both parties.

5. The words used in a written contract will be given their ordinary meaning, unless upon a consideration of the whole writing it becomes necessary to give an unusual significance to them.

6. Under Equity Rule 71, engineers may be appointed for the purpose of aiding the court in determining difficult technical questions arising in a proceeding in equity.

Argued October 14, 1921. Appeal, No. 450, Jan. T., 1921, by plaintiff, from decree of C. P. Luzerne Co., Dec. T., 1913, No. 10, on bill in equity, in case of Mt. Lookout Coal Co. v. Jos. J. Schooley et al. Before FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity for injunction and accounting. Cross-bill for an account. Before FULLER, P. J. The opinion of the Supreme Court states the facts. Decree for defendants. Plaintiff appealed.

*Error assigned,* among others, was decree, quoting it.

*F. W. Wheaton* and *John P. Kelly,* with them *B. R. Jones* and *H. A. Knapp,* for appellant, cited: Mentz v. Fire Ins. Co., 79 Pa. 478.

*Wm. S. McLean, Jr.,* with him *William S. McLean,* for appellee, cited: Henry v. Coal Co., 215 Pa. 448; Yost v. McKee, 179 Pa. 381.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1922:

Plaintiff, as assignee of a coal lease, filed a bill in equity against the lessors, defendants herein, averring the latter wrongfully threatened to forfeit the lease, be-

cause of alleged neglect to make the payments of minimum royalties provided thereby. A preliminary injunction was granted, which remained in force throughout the proceedings. Subsequently defendant filed a cross-bill, reiterating its contention made in its answer that plaintiff had wrongfully ceased paying the minimum royalties, and prayed a decree for payment thereof. The court below filed an adjudication, plaintiff's exceptions thereto were dismissed and, from the final decree which followed, plaintiff prosecutes this appeal.

Many points were raised and much evidence taken in the court below, but a proper interpretation of paragraph 8 of the lease will answer all the questions we are called upon to decide, and these arise only because defendants revoked the arbitration clause provided for therein, thus admittedly casting upon the courts the duty of determining when the minimum royalty payments should cease.

The paragraph referred to is as follows: "At any time that the said lessees may have paid for as much coal ......as in their opinion still remains in said premises unmined and capable of being mined, the said lessee may notify the lessors to choose a mining engineer, who, with the mining engineer of the lessees, shall select a third mining engineer disinterested in the result; and said three engineers shall thereupon make the necessary examinations for determining the amount of coal still on the property, by actual examination and testing of all the veins, including the 'Red Ash' or bottom vein, and if they, the said engineers, or a majority of them, shall be of the opinion that all of the said coal on said land and property hereby leased, capable of being mined under the terms of this lease, has been paid for, the said lessees shall not, thereafter, be required to make further payments on account of coal mined, or to be mined, until they shall have mined out the quantity for which they have paid, and thereafter the lessees shall only be liable to pay for the coal mined in excess of the amount already

paid for, using due and reasonable diligence to mine the excess of coal which may still remain in said lands, and which is capable of being mined therefrom."

The first question to be determined is: Until what date should plaintiff have continued paying the minimum royalties? It contends that, since the court below decided it acted "in good faith, with honest intention and intelligent knowledge," when it gave notice the time had come to cease paying those royalties, defendants were bound by its decision, under the authority of Shiffer v. Hudson Coal Co., 245 Pa. 479. We cannot agree with this contention, because the clause providing for plaintiff's preliminary determination of the question is but a means of setting in motion the machinery provided for ascertaining the actual facts, and itself plays no part in the final determination thereof.

Defendants, on the other hand, claim that, with the elimination of the clause referred to, the minimum royalty payments must continue until the court has actually determined whether or not they should cease, just as they would have continued until the arbitrators had decided that question. This view, which was adopted by the court below, is also erroneous, since it necessarily results in the making of a new contract, so far as this matter is concerned. The chancellor found that, if the arbitration clause had not been revoked, the engineers to be appointed thereunder would probably have decided the dispute "perhaps in the course of a month, certainly in the course of two or three months"; this litigation, resulting from its revocation, has already occupied nearly eight years. We cannot say that plaintiff would have consented to continuing the payments while a proceeding in equity "drags its slow length along," especially as, by the contract actually made, they sought to avoid this very thing.

There are some who still contend,—the law of criminal conspiracy to the contrary notwithstanding,—that "the end justifies the means," but it has never been

thought the means provided to attain an end should, in equity, be permitted to destroy the end itself, unless this case is to furnish the exception. The two paramount purposes underlying the lease are (1) that the lessors shall be paid for "all the merchantable anthracite coal" under their land, but nothing beyond this, and (2) the payments shall continue to be made, at not less than the minimum royalty provided, until all the unmined coal under the tract has been paid for. The method provided for determining whether or not it has been thus paid for, and the requirement of continuous payments until the decision, are incidental and relatively unimportant provisions, yet by the decree they have been made the most important part of the lease, a means for defeating its paramount purpose; and, if the court's conclusion as to the tonnage unmined is even approximately correct, would result in appellant paying to appellees nearly $200,000 more than the latter are entitled to receive. This, of course, is an impossible conclusion, so inequitable that no court of equity can entertain it.

In our opinion, when the arbitration provision was revoked, every clause relating thereto and depending thereon fell with it, the one now under consideration as well as every other, and thereafter the issue on this point was to be determined by the courts, exactly as if the lease had said: "The lessee shall continue payment of the minimum royalties until such time as it shall have paid for all the merchantable and minable coal still underlying the land." Under such a clause, the lessee would have been compelled to determine, in the first instance, whether it had fully complied with the requirements of the lease in this respect; if the lessors disagreed with its conclusion on this point, the courts would have been invoked to settle the dispute, just as they have been in this case; and the chancellor could fully protect both parties, the lessees by a preliminary injunction, if the evidence justified it, and the lessors by requiring adequate security, the payment of stated sums

into court, or, if necessary, by appointing a receiver, pendente lite. This would have been the court's duty, if the parties, by their contract, had not provided a method for settling the dispute; it was no less its duty, in the present instance, where, by the action of one of the parties, the provision actually made has become nugatory.

Moreover, even if we agreed with the chancellor in his conclusion regarding the effect of the revocation of the arbitration clause, or even if the contract had·expressly provided the minimum royalties should be paid until the court had decided the excess payments equalled the royalty value of the coal still unmined, we would nevertheless reverse this decree; for a court of equity is not so impotent as to be compelled to take nearly $200,000 from one litigant and give it to the other, who it finds is not entitled to receive it, when the accumulation of the greater part or all of that sum was due to the delays of the court itself, which neither party could have anticipated; and this is so even though, as all the counsel agree, the delays were excusable in the present instance.

The other question necessary to be decided is, whether or not,—in view of the fact, shown by another paragraph of the lease, that the minimum royalties only apply to chestnut and the larger sizes of coal,—appellant must continue paying them until they equal the royalties required to be paid on all the unmined coal, including pea and the smaller sizes, as defendant claims, or only upon those required to be paid on the chestnut and larger sizes, as plaintiffs contend. The clause from paragraph 8, by which this question must be determined, is that which requires the minimum payments to be continued until "all of the said coal on said land and property hereby leased, capable of being mined under the terms of the lease, has been paid for, [after which] the said lessee shall not thereafter be required to make further payments on account of coal mined, or to be mined, until they shall have mined out the quantity for which they

have paid." Upon this point we agree with the court below that no reason appears why the word "all" should be given any other than its usual meaning, especially since "thus only could the lessee be assured the privilege which the lease concededly contemplates....—..to pay only for what it gets."

Applying these conclusions to the facts found by the court below, and not disputed on this appeal, the rights of the parties are easily determined. On May 6, 1912, plaintiff gave notice it believed its excess payments of $148,129.04, exceeded the royalty which would thereafter become due on the unmined coal. This coal amounted to 499,958 tons, and the royalties thereon would be about $19,193, in excess of the $148,129.04. It follows plaintiff was mistaken in supposing it had paid sufficient minimum royalties, and hence was in error in ceasing their payments on that date. The deficit, however, would have been more than overcome by ten months' additional payments, at the $2,000 per month provided by the lease. If this was all that was necessary to be considered, we would amend the decree by simply requiring the ten months' minimum royalties to be paid. There is, however, another element regarding which we have not the figures to enable us to properly amend it. In accordance with its contention regarding the smaller sizes of coal, plaintiff has continued to pay, and defendants have received, without prejudice, the royalties accruing on those sizes, since April 25, 1912, when payment of the minimum rentals ceased. What these aggregate does not appear, but they should be deducted from the $19,193, and the balance will determine the number of months' minimum royalties yet to be paid.

It remains but to add that, in this class of difficult and important cases, with which the court below is so frequently overburdened, a judicious exercise of the powers conferred by Equity Rule 71, would not only greatly reduce the labors of the chancellor and minimize the delays, but would also result in aiding "the lack of ju-

dicial intelligence......in the performing a function which properly belongs to a board of engineers," and thus a trial judge would not be put in the position of the chancellor in the instant case, who, despite his long experience with the technical questions involved, publicly regrets his inability to solve them with entire satisfaction even to himself.

The decree of the court below is reversed, without costs to either party, and the record is remitted for further proceedings in accordance with this opinion.