Greenough et al. *v.* Colonial Colliery Company, Appellant.

Argued April 25, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*John Mulford,* with him *Henry S. Drinker, Jr.,* for appellant.

*J. P. Carpenter,* with him *A. W. Carpenter,* of *Carpenter & Carpenter,* for appellee.

OPINION BY BALDRIGE, J., July 15, 1938:

This is an appeal from a judgment entered by the court below on the pleadings in an action of assumpsit brought to recover minimum royalties from October 1, 1934, to September 30, 1935, under a coal lease.

The plaintiffs, on September 16, 1924, granted unto the Colonial Colliery Company the exclusive right and privilege of digging and mining anthracite coal in a certain tract of land, situate in Northumberland County, for a period of 12 years, with an option to renew for another 12 years and for several renewals "until all the coal is wholly exhausted." The fifth paragraph of the agreement stipulated that the defendant was to mine and ship at least 25,000 tons of coal each year during the term of the lease, unless prevented from doing so by matters beyond its control, "and, if ...... it shall not have mined and shipped ...... at least twenty-five thousand tons of coal, then to pay the parties of the first part, in cash, as a *liquidated rent* for the said demised premises during the

said year, such a sum of money as, when added to the rents accrued during the said year, shall be equal to the sum of six thousand dollars ($6,000), Provided, however, that if the party of the second part shall pay in any one year ...... any sum as rent over and above the amount that would be due in such year, ...... then and in such case, the said party of the second part may in any succeeding year (if the said party of the second part shall have mined and shipped and paid rent on at least twenty-five thousand tons in the said succeeding year) deduct the sum paid in any previous year over and above the amount of rent, without interest thereon, if calculated upon the actual tonnage aforesaid, from the rent due in such succeeding year over and above the amount of twenty-five thousand tons, the whole number of tons required to be mined and shipped." (Italics supplied.)

Clause (f) provides that if, in consequence of the partial exhaustion of the land, it became impossible, in the opinion of the lessee, to take by judicious mining, 25,000 tons of coal per year from the demised premises, then arbitrators shall be appointed to determine the amount of coal that can be judiciously taken out yearly, and the amount so determined shall thereafter be the minimum amount to be mined or paid for by the lessee.

The lessee failed to mine 25,000 tons per year. Arbitrators were duly appointed and they filed a report on December 27, 1934, effective as of October 1, 1933. They revised the fifth article of the original agreement by reducing the amount of coal required to be mined to 12,500 tons and the minimum royalty from $6,000 to $3,000, and added the following clause, which gives rise to the dispute in this case:

"When the Lessee *has paid,* either by way of rental or otherwise, for all the merchantable and workable coal estimated to remain in the leased premises, lessee

shall have the right to mine and remove said coal at any future time without making any further payments therefor, Provided, if the coal remaining in the said tract shall prove to be more than the estimate so made, then the lessee agrees to pay for such additional coal at the royalty rate herein provided when such coal is removed from the said tract." (Italics supplied.)

We will pass the question of the scope of the arbitrators' authority, as their right to make the additions and changes to the original agreement seems to be accepted by both parties to the original agreement.

The lessee paid the lessors a total of $30,435.91 between 1924 and October 1, 1934. Twenty-four thousand dollars of that amount was paid on April 24, 1934 (after the effective date of the arbitrators' amendment) in settlement of an action of assumpsit that had been brought by plaintiffs in 1933. The release then given by the lessors expressly stated that sum was in full payment of rents, royalties, and tolls to September 30, 1933.

The present action was brought to recover the sum of $2,262.12, the minimum royalty of $3,000 for the year ending July 30, 1935, less a credit of $737.88. The court below, in entering judgment against the defendant for want of a sufficient affidavit of defense held that the arbitrators' agreement could not be applied "retroactively," that the settlement of the action brought by plaintiffs in 1933 adjudicated finally the question of all royalties due to September 30, 1933, and precluded application of these prior payments to rents and royalties for which this action was instituted.

We think the court's action in entering judgment was proper.

The plaintiffs take the position that the following words in the arbitrators' agreement, "When the Lessee has paid, either by way of rental or otherwise, for all the merchantable and workable coal estimated to re-

main in the leased premises," was intended to cover only payments made subsequent to its effective date, to wit, October 1, 1933, and that the defendant has not paid minimum royalties since that date for all the estimated remaining coal. Defendant, on the other hand, contends that this language should be construed to mean all minimum royalty paid prior thereto, that it has paid for all the minable coal on the demised premises, and under the lease, as modified by the arbitrators, it need pay no more and may retain possession of the leased premises to remove the coal therein.

It is admitted that if the $30,435.91 were applied as of October 1, 1934, to payment for the merchantable coal remaining in the premises, no more would be due to the lessor on account of the minimum royalties, and plaintiff could not recover in this action.

Our primary duty in construing the agreement, as modified, is to ascertain and give effect to the intention of the parties. We agree with the appellant that the original agreement and the arbitrators' modification thereof should be considered together and not as separate and distinct instruments. In *Lehigh Valley Coal Co. v. Everhart,* 206 Pa. 118, 122, 55 A. 864, the Supreme Court stated: "The intention of the parties must be ascertained from their contract, and when thus ascertained, it must be carried out regardless of any supposed hardship that may result to either of the parties ...... Here, we are not concerned with what the parties should have done, what stipulation they should have inserted in their contract, but our sole duty is to compel them to observe and carry out what they did as evidenced by the instrument in writing which bears their signatures." See, also, *Bangor Peerless Slate Co. v. Bangorvein Slate Co. et al.,* 270 Pa. 161, 165, 113 A. 190; *Blough v. Lochrie et al.,* 275 Pa. 491, 496, 119 A. 654; *Robinson et al. v. Stover,* 320 Pa. 308, 314, 182 A. 145.

These parties in their original agreement fixed a minimum royalty as a liquidated rental, that is, an ascertained and determined amount to be paid for the use of the lessors' property. That provision, except as to the amount of the minimum royalty, was not changed. Minimum royalty payments in coal leases have been interpreted by our Supreme Court as being in the nature of a penalty or a liquidated rental for property, whether or not the coal is mined, and they may not be applied to payment for the coal remaining in place unless expressly so provided.

In *Lehigh Coal Co. v. Wright et al.,* 177 Pa. 387, 35 A. 919, the lessee took the same position the lessee does here. The lease there provided that the lessee pay 25c per ton for coal mined and, whether the coal be mined or not, pay the lessors an annual minimum rental of not less than $4,000. The lessee notified the lessors that the minimum rental they had received up to that date had overpaid them for all the coal in the tract, including what remained in place, and that no further payments would be made. The court permitted the lessors to forfeit the lease, holding that the lessee was bound to pay the $4,000 annual rental while it was in possession, as minimum royalty is in no sense payment for coal mined or unmined.

In *Denniston v. Haddock,* 200 Pa. 426, 429, 50 A. 197, where a new lease was substituted for an old one, Mr. Justice MITCHELL, speaking for the court, said: "He [lessee] now claims to defalk the overpayments under the old lease, on the ground that he had paid for the coal and was entitled to it without further charge, because under his continued possession he could take it away without a trespass. The defect of this view is in the assumption that he had paid for the coal. He had not. He had paid his rent on the stipulated terms, but he had paid nothing for the coal in place. His sole claim and title to that was to mine it during the

term of the lease. As to it he was in the position of a lessee of a house bound to pay rent whether he occupied it or not. The fact that he paid without occupying it would not excuse his liability for further rent if he accepted a new lease." So, here, under the old lease the lessee paid its rental, but it did not acquire title to the coal in place.

For similar holdings regarding the function and purpose of royalty payments in so far as particular coal leases are concerned, see *Lehigh Valley Coal Co. v. Everhart,* supra; *Penna. Coal & Coke Co. v. Witherow,* 215 Pa. 327, 64 A. 535; *Woodruff v. Gunton,* 222 Pa. 384, 71 A. 851; *Shiffer v. Hudson Coal Co.,* 245 Pa. 479, 91 A. 886.

We find no expression in the original lease that indicates an intention of the parties to apply the minimum royalty payments to the purchase of coal remaining unmined. In the fifth article there is a provision that the minimum royalty payments made in one year may be applied to a payment for coal actually mined above the minimum "in any succeeding year." Under clause (f) the arbitrators may adjust minimum royalty from year to year to the amount of coal that "can be taken out yearly by judicious mining." We do not construe this language as meaning that the adjusted minimum is to be credited generally against coal unmined, except as to "surplus" mined in any succeeding year. In our view, the original lease shows clearly an intention to make such royalty payments a liquidated rent or penalty for the lessee's failure to mine the minimum tonnage. It would have been perfectly feasible for the parties to have provided that the total royalty payments be applied generally to the payment of all unmined coal, as was apparently done in the cases of *Mt. Lookout Coal Co. v. Schooley,* 271 Pa. 539, 541, 115 A. 822; *Blough v. Lochrie,* supra; *Lehigh Valley Coal Co. v. Coxe Bros. & Co., Inc.,* 327 Pa. 23, 27,

192 A. 658; *Shoemaker v. Mt. Lookout Coal Co.,* 270 Pa. 432, 436, 113 A. 410.

The arbitrators' agreement modifying the original lease is the only basis in support of the appellant's contention. It definitely appears therein that its terms and conditions were to be effective from October 1, 1933. It did not relate back in any wise beyond that date. All moneys owing by the lessee at that time had been paid and release for all claims had been given by the lessors who remained the owners of the unmined coal. As William H. Greenough stated in his letter of January 22, 1936, to the president of the defendant company: "We started as of October 1, 1934, with a clean slate, with the understanding that a minimum royalty of $3,000 or a minimum tonnage of 12,500 tons as a basis of the consideration of the lease." The defendant apparently recognized its obligation, after the arbitrators' agreement had been executed, to continue to pay not less than $3,000 as a minimum rental, as it paid that sum for the year ending September 30, 1934, and paid for the following year, on account of the minimum royalty, the sum of $737.88. The vice-president and general manager of the defendant, on January 15, 1936, wrote the plaintiffs' agents, in response to a letter written to him reminding him that there was a balance due on the royalty over and above the amount paid, which contained the following: "The difference between $3,000 the annual minimum royalty, and the amount of royalty paid of $737.88, will leave a balance to equal the minimum of $2,262.12, which is also in line with your figures. We are writing our Philadelphia office today calling their attention to the balance of the minimum due."

If the appellant's contention is correct, we fail to understand the payment of royalties on coal belonging to the lessee or the necessity for the arbitrators providing for the payment of any future rents or royalties

when they were aware that the plaintiffs had been paid royalty equal to the amount of coal remaining in their land. Under defendant's theory, nothing is due or payable to plaintiffs for the estimated coal remaining. All that would have been necessary, if the parties considered the coal belonged to the lessee, was the insertion of a provision in the agreement that the defendant should have the right to mine and remove the coal estimated remaining without payment of additional rent.

In view of the fact that the original lease calls for a "liquidated rent," it can hardly be said, after a consideration of it, including the arbitrators' agreement, the interpretation thereof by the parties, and all the attending circumstances, that it was the intention of the parties to apply minimum royalties paid prior to the arbitrators' agreement to the payment for unmined coal from the beginning of the original lease. It would seem that a more definite statement doubtlessly would have been employed to overcome the clear, express provisions of the original lease, if that had been contemplated. The construction which we place upon it does not impose a hardship beyond that which the parties themselves agreed to undertake. The lessee, if it had so desired, could have moved earlier to have the minimum rental reduced, or otherwise have had opportunity to modify the terms of the lease.

Judgment affirmed.