## Guerrein v. Pelham Electric Manufacturing Corporation

*Quinn, Leemhuis, Plate & Dwyer*, for plaintiff.
*Gifford, Graham, MacDonald & Illig*, for defendant.

LAUB, J., June 21, 1954—A rather unusual problem is presented by the preliminary objection in the nature of a demurrer which defendant has filed to this complaint in assumpsit. In it defendant contends that plaintiff fails to state a cause of action upon which relief can be granted.

The following are the pleaded facts.

Plaintiff, owner of a factory building, leased his property to defendant, a manufacturing company. Defendant placed certain items of machinery in the leased building and used them for its manufacturing purposes and not for any purpose of plaintiff. As a result of the use of the land for manufacturing purposes, the taxing authorities of the School District and City of Erie assessed the machinery as part of the realty and charged plaintiff with the full amount of the total assessment. The assessment thus made was broken down by the assessor into component parts so that the amount of increase represented by the machinery was easily ascertainable.

Plaintiff, after repeated requests to defendant to pay the machinery portion of the tax, and after defendant had refused to do so, paid the entire amount of the tax and now seeks to recover that portion thereof represented by the assessment on the machinery. The lease between the parties is silent concerning the payment of taxes.

Defendant, at the argument, took the position that plaintiff, as owner of the fee, was chargeable with all

real estate taxes; that since there was no contractual arrangement concerning the payment of tax increases, it has no obligation to pay them. Plaintiff, it argued, was doing no more than the law required of him when he paid the total amount and that if plaintiff had desired to protect himself he could have done so by an appropriate clause in the lease.

Plaintiff's position is that he has no control over the amount of machinery placed in the building and that if defendant's contentions are correct he could be made to suffer the complete loss of his building by the extensive installation of machinery therein. His position is that the machinery was taxed as real estate; that defendant owned the machinery and therefore was an owner of taxable real estate and ultimately liable for the taxes thereon. He further contended that when defendant refused to pay the tax he had to do so in order to protect himself from loss and was therefore subrogated to the right of the taxing authorities to collect from defendant.

The logical starting point for any consideration of the problem is the determination of the character of the taxable property. The act of assembly supporting the assessment is the Act of May 22, 1933, P. L. 853, sec. 201, as amended, 72 PS §5020-201. This act, which had its origin in the Act of April 29, 1844, P. L. 486, defines the subjects of taxation for county, city, borough, town, township, school and poor purposes and, in subsection (a) unquestionably establishes a factory as real estate. There have been many decisions based upon the language used in both acts and in all of these the machinery itself, when used for manufacturing purposes, has been declared to be real estate. As early as 1872, the Supreme Court in interpreting the Act of 1844 in Patterson v. Delaware County, 70 Pa. 381, approved the lower court's conclusion that the ma-

chinery in a cotton factory was real estate. There it was said (p. 383):

"When a man, of common intelligence and business experience, speaks of 'Mr. Patterson's Mill', what does he mean? The establishment in its completed condition—fitted for its proper use? Or the bare walls? (For there is no intermediate point; all between, from the engines to the spindles, is *machinery.)* He could hardly mean the latter; for the walls do not constitute a mill, and bear no more resemblance to it, than to a barn".

In Mesta Machine Company Case, 347 Pa. 191, 195 (reversed by the Supreme Court of the United States on other grounds) it was said:

"There can be no doubt that the machinery here under consideration formed a real and permanent part of the mill of the Mesta Company, and was, therefore, a proper subject of assessment as real estate. . . ."

See also North Side Laundry Company v. Allegheny County Board of Property Assessment, etc., 366 Pa. 636, 640, where it was said:

"The Board merely assesses all real estate included in the Act of 1933 and, as we have previously stated, the equipment in plaintiff's laundry is real estate within the meaning of that Act."

Having concluded that defendant's machinery in this case was real estate within the meaning of the taxing statute, who is ultimately liable for the payment of the tax? Obviously, for practical reasons, assessors could not be required to delve into the strictly private transactions between parties and try to uncover leasehold or other interests in order to determine who should be assessed. This was pointed out in Guthrie v. Pittsburgh Dry Goods Co., 47 Pa. Superior Ct. 384. Thus, the assessor need go no further than to determine the registered owner of the fee in making, the assessment. However, this does not seem to

completely dispose of the question of who is ultimately liable in cases where the real owner of the taxable subject matter is not the registered owner of the fee. There has been at least one instance where the assessor, armed with knowledge that the owner of the fee did not own the industry located thereon, taxed the industry itself. In Pennsylvania Stave Company's Appeal, 236 Pa. 97, a sawmill was located upon leased land and by the terms of the lease all the buildings and equipment of the mill were the property of the tenant company and subject to removal at the end of the lease term. The assessor not only assessed the houses, equipment and machinery of the mill to the tenant, but he also assessed the land as the tenant's property. The Supreme Court brushed aside the tenant's contention that the assessment was invalid because the equipment was personalty located upon the land of another and held that the lease constituted an interest in real estate which was the subject of taxation. It further held that under the Act of 1844 there was no suggestion that the taxation of a mill was to depend upon the kind or character of the estate the owner may have in the land upon which the factory is located. This same proposition was again set forth by the Supreme Court in Cowanshannock Coal & Coke Co.'s Tax Assessment, 283 Pa. 122, 125, thus:

"The Act of April 29, 1844, Section 32, P. L. 497, does not make fee ownership a prerequisite to assessment of property. The taxation of houses, mills and factories does not depend on the ownership of the land. The taxing statutes look to the nature of the structure rather than to the technical legal distinction as to what constitutes real estate."

See also County of Franklin v. McClean, 93 Pa. Superior Ct. 165, where improvements were constructed by a tenant on land leased from the Common-

wealth and the court upheld a real estate assessment against the tenant.

It therefore appears that defendant in this case was the owner of taxable real estate which could have been initially assessed in his name had the taxing authorities seen fit to do so. In other words, both plaintiff and defendant owned real estate situated on the same geographical location and under the circumstances as they appear here it is apparent that plaintiff paid taxes on defendant's real estate—not on his own real estate enhanced in value by reason of personalty situate thereon. The problem therefore has been reduced to this simple question: Having paid the tax on another's real estate by virtue of legal necessity, may the payor thereof recover it from the owner of such real estate? In this connection it must be pointed out that the suit here is between the owners and not a suit to prevent the levy or to recover back from the taxing authority the tax so paid. Obviously, in such case the result would be different.

Our research and that of counsel has produced no exactly four-square precedent from a factual standpoint but there is ample precedent in analogous situations. We can begin this phase of the discussion by a quotation from 51 C. J. S., Landlord and Tenant, §359(b) as follows:

". . . if the circumstances are such as to impose the obligation to pay particular taxes on the lessee, if the lessor pays such taxes in order to protect his interests he is not a volunteer and may recover the amount paid from the lessee."

Cited as authority for this statement is Millard, Exec., et al. v. Delaware, Lackawanna & Western Railroad Co., 240 Pa. 234, where the lessor of coal lands, the registered title holder, paid taxes which the lessee was obligated to pay and lessor was permitted to recover from the lessee. In First National Bank of Ashley

v. Reily, 165 Pa. Superior Ct. 168, a judgment creditor sued the registered owner in assumpsit to recover taxes which plaintiff had to pay when he bought in the owner's property on execution. There, although the suit was not effective because of the operation of the statute of limitations, the Superior Court said (page 170) :

"Our books are replete with cases where a party who has paid taxes assessed against the property of another has recovered them in an action at law. A mortgagee who purchases the mortgaged premises and pays delinquent taxes is subrogated to the rights of the taxing authorities, and may recover them in assumpsit against the record owner, Hogg v. Longstreth, 97 Pa. 255, *against a real but unregistered owner, N Phila. Trust Co. v. Heinel Bros., Inc., 315 Pa. 385, 172 A. 692*, or against a record owner who is a mere trustee, Pennsylvania Co. v. Bergson, supra. An owner of ground rent, foreclosing therefor and paying taxes owed by the terre tenant is allowed indemnity from the latter. Frank v. Neill, 44 Pa. Superior Ct. 468. The same principle has been applied in a large variety of legal relationships. Haverford L. & B. Assn. of Phila. v. Fire Assn., 180 Pa. 522, 37 A. 179 (co-tenant believing himself sole owner entitled to subrogation against his co-owner for taxes) ; McDannel v. Weddige, 79 Pa. Superior Ct. 494 (remainderman paid taxes owed by life tenant) ; O'Donnell v. Neely, 66 Pa. Superior Ct. 351 (vendor paid taxes owing by his vendee in order to remove lien from his other property) ; Mangold v. Isabella Furnace Co., 31 Pa. Superior Ct. 275 (vendor paid taxes assumed by his vendee who did not complete his sale) ; Kitchen v. Smith, 101 Pa. 452 (tenant paid taxes owed by landlord) . . ." (Italics supplied.)

The theory supporting recovery in cases of this sort is that the real owner has been unjustly enriched by the payment of his taxes by another and, therefore,

plaintiff is equitably subrogated to the rights of the taxing authorities. There can be no question but that it is the policy of the law to require the real owner to pay the taxes (North Philadelphia Trust Company v. Heinel Bros., Inc., 315 Pa. 385, 387), nor that equitable subrogation may be invoked to effectuate this policy: Fidelity-Philadelphia Trust Co. v. Land Title Bank and Trust Co., supra. As said in Bunting v. North Philadelphia Trust Co. et al., 120 Pa. Superior Ct. 419, 420:

"The registered owner is liable for the taxes by reason of being the registered owner, and not because of any beneficial ownership in the property. He may recover the taxes so paid from the real owner, if the latter is financially solvent, but by becoming registered owner he assumes personal responsibility. Whether he can recoup himself or not from another is his lookout." [1]

In summary, therefore, we have the following: Plaintiff is the registered owner of the land and building taxed in this case. Defendant is the real owner of *real estate* situated on plaintiff's land. As real estate, defendant's property was the subject of tax which, under the policy of the law it ought to pay. Plaintiff was required to pay the tax by reason of being the registered owner and by reason of defendant's refusal to pay the tax on its own real estate. Plaintiff was not required to go in default or suffer penalties for delay in payment, nor was he required to suffer his property to be taken in execution by the taxing authorities.[2]

---

[1] "In cases where the registered owner pays the tax, he, of course, has a claim against the real owner for recoupment": Pennsylvania Co. on Insurance on Lives and Granting Annuities v. Bergson, 307 Pa. 44, 53.

[2] Mangold v. Isabella Furnace Co., 31 Pa. Superior Ct. 275, 278, 279.

He was therefore not a volunteer. Under the doctrine of equitable subrogation, plaintiff may maintain his action.

And now, to wit, June 21, 1954, the preliminary objection is dismissed and defendant is allowed 20 days within which to file an answer to plaintiff's complaint.