Lancaster Transportation Company *v.* New York and New Brunswick Auto Express Company, Inc., Appellant.

Argued September 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Before WISSLER, P. J.

*W. Hensel Brown,* with him *Brown & Zimmerman,* for appellant.

Alfred C. Alspach, for appellee.

OPINION BY HIRT, J., November 14, 1958:

The plaintiff is a common carrier, engaged in the transportation of freight by motor vehicle, with its principal place of business in Lancaster, Pennsylvania. Its certificated territory is extensive throughout Pennsylvania, and in Maryland, New Jersey and Delaware. It employs 450 men, and operates 7 terminals; it has about 350 units of various transportation equipment. The defendant, operating out of New Brunswick, New Jersey, also is a common carrier. On February 27, 1957, the plaintiff received a truckload shipment of coils and bales of twine at its Lancaster terminal for delivery to a consignee in Brooklyn, N. Y. It did not have Interstate Commerce rights to transport freight into Brooklyn and for that reason plaintiff, at its terminal in Philadelphia, delivered its loaded trailer to the defendant, and received on "interchange" from the defendant company a like trailer owned by it, for use by the plaintiff until its trailer was returned by the defendant. The shipment was hauled by the defendant to destination, and was delivered to the consignee in Brooklyn the day following receipt of the truck on interchange. Plaintiff received its freight charges for carriage of the cargo to Philadelphia, and the defendant was compensated for the portion of the haul from Philadelphia to Brooklyn. On March 6, 1957 plaintiff's trailer was destroyed by fire on the Pennsylvania Turnpike. At that time it was still in the possession of the defendant, and was then in use in defendant's transportation service. Plaintiff, in due course, had returned defendant's trailer to it and when the defendant refused to pay plaintiff for the loss of its trailer, this action was brought to recover its value. The jury, upon sufficient competent evidence, found that the

value of plaintiff's trailer, a 1952 Strick, was $3,250 at the time of the loss, and the verdict was for the plaintiff in that amount. This appeal is from the refusal of the court to enter judgment for the defendant n.o.v. and in the alternative, to grant a new trial.

Plaintiff's action was based upon "a custom of the trade" which imposes liability on the carrier having physical possession of the trailer, for damage to it, up to the time of its return to the other carrier-party to the interchange. The applicable legal principles must be regarded as settled law. A usage "may be denominated a custom" when proven to " 'be certain, continuous, uniform and notorious . . . so certain and uniform as to be not only valid and enforceable in a court of law, but the parties must be presumed to have known it and acted in reference to it' ": *Electric Reduction Co. v. Colonial S. Co.*, 276 Pa. 181, 191, 120 A. 116. And in an action "Where it is so alleged and proved, it is a fair presumption that the parties, on entering into their engagement, do it with reference to the custom, and agree that their rights and responsibilities shall be determined by it": *Shipley v. Pittsburgh & L. E. R. Co.*, 83 F. Supp. 722, 749. Cf. *Goodman v. Whiting Lumber Co.*, 62 Pa. Superior Ct. 230; Brown Penna. Ev. 231. It has been said that to establish a custom "the evidence by which it is proposed to prove it, must be clear, uncontradictory and distinct . . . so . . . as to leave no doubt upon the mind with reference to its nature and character": *Adams v. Pittsburgh Insurance Co.*, 76 Pa. 411, 414. A custom proven to be certain, continuous, uniform, notorious and reasonable must be presumed to have been known and acted upon by the parties, and when so established by the evidence, becomes the law of the particular business in which it exists. *Albus v. Toomey*, 273 Pa. 303, 116 A. 917.

The fact of an accident and the resulting total loss of the trailer while in defendant's possession are not in dispute; the question of negligence, or the absence of it, is immaterial and is not involved. The uncontradicted testimony was that this custom or usage prevailed not only among approximately 200 carriers with which plaintiff did business but that the usage was recognized and had been given effect for many years throughout the United States by practically all of the carriers certificated by the Interstate Commerce Commission. Under the custom applicable to "interchange" a plaintiff could accept freight for delivery in full trailer loaded lots to a consignee anywhere in the United States. The defendant did not deny the existence of this custom and usage of the business of common carriers but, admitting that it prevailed generally, contended that the custom had no application in this instance, because of a special contract between the parties as to liability under the circumstances. It was alleged that the contract and not custom governed the case.

It was admitted that beginning some time in 1935 and continuing until about 1954 the plaintiff, under an agreement with defendant, picked up and delivered all of the latter's freight in the territory, as a special agent of the defendant. The fact that the defendant then had no freight terminal in Lancaster was the reason for the agreement. During that period it is conceded that it was also agreed that each of the parties assume the loss or damage of its own equipment (either directly or through an insurer) while in the possession of the other on interchange. There is some testimony that the then financial instability of the defendant prompted the plaintiff to enter into the agreement fixing liability for the loss in contravention of the prevailing custom. In 1950 and again in 1954 the plain-

tiff on two occasions did absorb the loss of equipment which was damaged or destroyed while in the possession of the defendant. Beginning in 1955 however after the defendant (under new financially responsible ownership) had established its own terminal in Lancaster, the agency agreement was terminated. And beginning also with that date the plaintiff's testimony was that its understanding with the defendant as to liability on interchange of equipment was also abrogated and that it was then agreed that its loss or damage thereafter was to be governed by the usage and custom of the trade.

The question whether the rights and liabilities of the parties under the circumstances were controlled by custom or by special agreement in the instant case, was for the jury. *Electric Reduction Co. v. Colonial S. Co.*, supra. This question together with all other factual issues were clearly and properly submitted to the jury by the trial court and in the light of the verdict we may not question the validity of the judgment entered thereon. *McKown v. State Mut. Life As. Co.*, 127 Pa. Superior Ct. 117, 191 A. 621. The rules for a new trial and for judgment n.o.v. were properly discharged.

Judgment affirmed.