421 A.2d 281

**PITTSBURGH NATIONAL BANK, Trustee under the Wills of William R. Marshall, and Lloyd N. Tatem, Assignee of Garrettsville Lumber Company,**

v.

**ALLISON ENGINEERING COMPANY, A Partnership, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1979.

Filed July 11, 1980.

Zeno Fritz, Pittsburgh, for appellant.

Michael W. Balfe, Pittsburgh, for appellees.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

VAN der VOORT, Judge:

The issue in this case is the correct interpretation of two coal leases, each of which provided for a minimum royalty of $50.00 a month prior to the commencement of mining operations, payable quarterly in advance, and thereafter a tonnage royalty of twenty cents a ton for coal mined and removed from the premises.

The leases were entered into February 26, 1949 between Garrettsville Lumber Company, a partnership composed of William R. Marshall and Lloyd N. Tatem as lessors and Allison Engineering Company, the appellant herein, as lessee. Mr. Tatem died September 29, 1950 and Mr. Marshall on June 14, 1966. Pittsburgh National Bank, the appellee herein, is a trustee under the Wills of both men, and instituted this action in that capacity.

The royalty provisions of the leases were identical and read as follows:

"2. Lessee covenants and agrees to pay the Lessor the sum of $.20 per ton for 2,000 pounds for all mineable, merchantable and marketable coal mined and removed from said premises . . .".

"3. Lessee covenants and agrees to commence mining operations upon said premises within _____ from the effective date of this lease and in event of failure so to commence mining operations agrees to pay Lessor as a minimum royalty the sum or price of $50.00 per month, payable quarterly in advance."

The leases were prepared on identical printed forms, with typewritten provisions filled in. No time period was inserted in the blank space in Paragraph 3. There was no elaboration of, or reference to, either royalty paragraph elsewhere in the lease, and no explanation or definition of the intended nature of the minimum royalty. There was no reference to a right of recoupment of the minimum royalty against later tonnage royalties.

The appellant did not begin mining operations under the leases until 1973, but made minimum royalty payments

totalling $29,100 between 1949 and 1973. In making the subsequent tonnage royalty payments, the appellant took the position that the earlier minimum royalty payments had been an advance payment against tonnage royalties to be recouped when the coal was later mined and removed. Consequently, it deducted the tonnage royalties of twenty cents a ton from the earlier minimum royalty payments, and only after it had recouped its aggregate minimum royalty payments of $29,100 did it pay the tonnage royalties called for by the leases. The appellee disputed this recoupment, contending that the earlier minimum royalties were in the nature of a penalty or rent for the period of delay in mining the coal and, consequently, not to be treated as an advance payment on the tonnage royalties. Failing to resolve the dispute by negotiation, the appellee brought suit in assumpsit to recover the $29,100 that had been withheld by the appellant by way of recoupment.

Before trial, the appellee moved for Summary Judgment, which was opposed by the appellant on the contention that it should be allowed to introduce checks and correspondence with the appellee and its predecessors in interest for the purpose of showing the intent of the parties. The Court, speaking through Judge J. Warren Watson, denied the Motion for Summary Judgment, stating that the contract language was capable of either interpretation, and concluding that there should be a trial "to ascertain the intent of the contracting parties" and "to determine the custom and usage of the coal mining industry."

In December 1978, the case was tried before Judge Joseph A. Del Sole, sitting without a jury. The appellee offered the testimony of one of its officers that it had consistently treated the minimum royalty payments received by it as a penalty for the period that coal was not mined, and consequently, they were treated as income on its accounts. It also introduced evidence that by long and well–established Pennsylvania usage and custom, minimum royalties in a coal lease payable prior to mining are considered to be a liquidated rent or a penalty for failure to mine coal, and are not to

be credited against subsequent tonnage royalties unless the lease specifically so provides.

The appellant offered evidence that in making its quarter-yearly minimum royalty payments, it had consistently labeled them as "advance royalties" on its checks, and that neither the appellee nor its predecessors in interest had contested the characterization until the appellant sought to recoup such payments against the later tonnage royalties. The appellant likewise offered evidence that it had used the term "advance royalties" in some earlier correspondence with the original lessors, and that the lessors had used the same terminology in responding. However, there is nothing in appellant's testimony to indicate that the parties had ever addressed themselves to the question of whether there was a distinction intended between the "minimum royalty" of the leases and an "advance royalty" as it was referred to on the checks and in the correspondence, or whether the royalty under either name could be recouped against the later tonnage payments for coal removed.

In January 1979, the court entered a verdict for the appellee in the amount claimed, with interest. The court en banc dismissed appellant's Exceptions on May 7, 1979, and entered judgment for the appellee in the amount of $37,-155.11. An appeal followed. We affirm the ruling for the reasons hereinafter stated.

It is appellant's initial contention that the appellee should not have been permitted to introduce evidence as to the meaning of the leases, because their terms were clear and unambiguous. This is a reversal of appellant's original position in successfully opposing appellee's Motion for Summary Judgment so that it could introduce evidence bearing on the intent of the parties. It is likewise inconsistent with the appellant's introduction of evidence to show that it had characterized minimum royalty payments as advance royalties without objection from appellant. If it was appropriate for appellant to offer testimony as to the meaning of the leases, it was equally appropriate for the appellee.

Appellant's testimony consisted of its unilateral characterization of the minimum royalty payments as "advance royalty" payments on checks and in some correspondence, and the appellee's apparent acquiescence in the use of that language. However, appellant's testimony fell short of establishing what distinction, if any, it had intended to convey by the use of this language. We find no more basis for concluding that an "advance royalty" implies a right of recoupment than does a "minimum royalty." It could imply a royalty in advance of mining operations quite as well as an advance payment on tonnage royalties. In any event, it was not the contract language, and appellant could not make it so by its unilateral substitution of terms. Appellant does not claim that it ever raised the issue of recoupment with the appellee until the parties were confronted with the correct computation of tonnage royalties.

The testimony of appellee's officer that the bank treated minimum royalty payments as income in the nature of a penalty for failure to mine was not offered as expert testimony but simply as a statement of how the appellee kept its records. This was by way of a refutation of appellant's contention that the appellee had conceded the right of recoupment by accepting checks identified as payment for advance royalties.

The appellee offered expert testimony that it was the long–established custom and usage of the Pennsylvania coal industry to treat a minimum royalty as a penalty or liquidated rent which could not be recouped against later tonnage royalties unless expressly so provided in the lease. This position is corroborated by many Pennsylvania decisions over a long period of years, well reviewed in *Greenough v. Colonial Colliery Company*, 132 Pa.Super. 270, 1 A.2d 174 (1938) and *Muir v. Thompson Coal Company, Inc.*, 209 Pa.Super. 432, 434–35, 229 A.2d 480 (1967).

Evidence of an industry custom or usage which is notorious, well–established and reasonable is always a relevant consideration in determining the intent of the contracting parties. *Fisher v. Congregation of B'Nai Yitzhok*, 177

Pa.Super. 359, 110 A.2d 881 (1955); *Lancaster Transportation Co. v. New York & New Brunswick Auto Express Co.,* 187 Pa.Super. 621, 146 A.2d 150 (1958).

Coal leases have been a common commodity in Pennsylvania for well over a century; and the treatment of a minimum royalty as a penalty or rent, not recoupable against tonnage royalties unless so provided in the lease, has become so well–established and so universally accepted that it has become a rule of law. In *Greenough*, 132 Pa.Super. at 275, 1 A.2d 174, this court reviewed a long line of Supreme Court decisions and concluded:

> Minimum royalty payments in coal leases have been interpreted by our Supreme Court as being in the nature of a penalty or a liquidated rental for property, whether or not the coal is mined, and they may not be applied to payment for the coal remaining in place unless expressly so provided.

The appellant was in the coal mining business when it leased the appellee's property in 1949, and it is entirely reasonable to assume that it was aware that the law was well–established that minimum royalties could not be recouped against tonnage royalties unless such a right was set out in the lease.

In *Muir*, 209 Pa.Super. at 434–35, 229 A.2d 480, this court again dealt with this issue of recoupment. The facts in *Muir*, supra, are strikingly similar to the case at bar. The Muir lease provided for royalties of twenty cents a ton for coal mined and removed. It also provided that coal should be removed in such quantities as to sustain royalties of at least $25.00 a month. Failing to mine this tonnage, that sum was to be paid as a minimum royalty. The lease contained no agreement for recoupment of minimum royalties against tonnage royalties. No mining took place between 1949 and 1963, during which time minimum royalties were paid. When mining royalties became due, the lessee claimed a right of recoupment for the earlier minimum royalties paid. This claim was denied on reasoning equally applicable to the case before us. The Court said:

The only issue involved in this appeal is whether, where a coal lease grants the right to remove the minerals to exhaustion and provides a minimum monthly royalty with no mention in the lease of a right to recoupment, is the lessee permitted to offset minimum royalties already paid when due and when no mineral was mined, against royalties due for coal mined in later months in excess of the minimum. As the court below stated: "Thus custom and usage would seem to favor the lessee who took the pain and effort to definitively set forth his right of recoupment. Generally minimum royalty provisions are based on the proposition that the coal was in existence and can be profitably removed through proper efforts made. Therefore, they serve as incentives for compliance with the duty of performing adequately and promptly." When it is the intention of the parties, the right of recoupment of minimum royalties must be inserted in the contract. *Leh. v. C. Co. v. Coxe Bros. & Co., Inc.,* 327 Pa. 23, 192 A. 658 (1937) . . . .

Minimum royalties amount to a liquidated rent or penalty for the lessee's failure to mine the minimum tonnage. Minimum royalty payments in coal leases have been interpreted by our Supreme Court as being in the nature of a penalty or a liquidated rental for property, whether or not the coal is mined, and they may not be applied to payment for the coal remaining in place unless expressly so provided.

We agree with the court below that in this case the lessee may not offset minimum royalty payments against fixed royalties due for coal subsequently mined where no right of recoupment is set forth in the lease. 209 Pa.Super. at 434–35, 229 A.2d 480.

It is a fair reading of *Greenough* and *Muir* to say that the usage and custom in this Commonwealth of treating a minimum royalty as a penalty or rent, not to be recouped against later tonnage royalties unless expressly provided in the lease, has become so universally accepted as to become a rule of law. Consequently, it would have been

permissible for the Court below to have decided this case on the appellee's Motion for Summary Judgment. However, no error was committed in taking evidence on the issue of intent and usage, for it simply corroborated the well—established understanding.

On June 5, 1979, twenty—nine days after the Court en banc had entered judgment for the appellee, the appellant petitioned the Court below to vacate the judgment and grant a new trial because a political committee advocating the reelection of Judge Del Sole had made a $20,000 loan from the Commercial Department of Pittsburgh National Bank on April 20, 1979. The loan was made in an arms—length transaction at the then—prevailing rate of interest. Judge Del Sole, his wife, and others were guarantors of the note. The court, acting by Judge Martin Wekselman, after taking the testimony of Judge Del Sole, dismissed the petition.

As a matter of hindsight, it would have been prudent for the committee to have made its loan elsewhere. But we must say in fairness to Judge Del Sole that the record discloses not the remotest relationship between the loan and this litigation. The loan was made through the bank's Commercial Department which is operated quite separately from its Trust Department. The loan was made at the going rate of interest, and the bank required individual guarantors for the committee. Furthermore, the Trust Department is only the nominal litigant in this case, the actual beneficiaries being the income recipients of the trust.

It would have been most unfair to the appellee to vacate the judgment and order a new trial because of this collateral and unrelated act of the campaign committee. On the record before us, this case could have been disposed of on a Motion for Summary Judgment, for no Pennsylvania court would permit recoupment of the minimum royalties in the absence of contractual language authorizing it. As the leases are written, a retrial before another judge could only result in another verdict for the appellee.

Affirmed.