522 A.2d 97

**Charles G. ROSS and Mildred G. Ross, His Wife, Appellants,**

v.

**GULF OIL CORPORATION.**

Superior Court of Pennsylvania.

Argued Dec. 3, 1986.

Filed March 13, 1987.

Joseph J. Musto, Wilkes-Barre, for appellants.

Ronald V. Santora, Wilkes-Barre, for appellee.

Before WICKERSHAM,* McEWEN and BECK, JJ.

BECK, Judge:

The issue on appeal is whether a lessor may eject a lessee when the lessee engages in unlawful activity on the leased premises and the lease is silent as to the remedy available. The lower court held that the lessor could not prevail in an action for ejectment. We affirm.

There is no dispute as to the material facts in this case. In 1966 the Rosses, who are the appellant-lessors, entered into a lease with Gulf Oil Corporation ("Gulf"). Gulf leased the premises in question for a term of fifteen years. The lease included three five-year renewal options. Under the lease, Gulf made substantial improvements which included the building of a service station. With certain exceptions, all improvements made by Gulf revert to the lessors upon termination of the lease. Under the lease Gulf agreed to hold the lessors harmless for damages caused by the negligence or fault of Gulf, its sublessees or assigns, in the operation of the service station. The issue before us arises because the lease is silent as to rights and remedies available to the lessor in the event that lessee engages in unlawful activity on the leased premises.

In 1978, Gulf drilled a bore hole into an abandoned coal mine beneath the surface of the premises in order to discharge sewage accumulated at the service station. The Rosses repeatedly requested that Gulf cease this method of discharge and offered an alternative means of sewage dis-

* This Decision was rendered prior to the resignation of Judge Wickersham.

posal on their adjacent property. Gulf continued to dump the sewage into the mine.

In 1981, the Rosses commenced this action in ejectment. They averred that Gulf's method of sewage disposal was unlawful, and that they suffered damages including embarrassment and exposure to potential liability for the cost of cleaning up the pollution which may occur in public waters as a result of Gulf's sewage disposal method. At trial, the Rosses produced evidence showing that Gulf's sewage disposal activity was unlawful. Gulf did not present contradictory evidence. Without specifying the statutes violated the trial court determined that Gulf's activity was unlawful. The court, nevertheless concluded that the Rosses could not prevail in an action based on ejectment. We agree.

The Rosses alleged that Gulf's conduct amounted to a misdemeanor violation of the Pennsylvania Anthracite Coal Mine Act, 52 Pa.Stat.Ann. § 70–524 (Purdon 1966); and a violation of the sewage permit requirement, Pa.Stat.Ann. tit. 35 § 750.7(a) (Purdon 1977). They also allege that the sewage pollution affects public waters in violation of Pa. Stat.Ann. tit. 35 § 691.401 (Purdon 1977). These violations result in a public nuisance. *Id.*, Pa.Stat.Ann. tit. 35 § 750.14 (Purdon 1977); Pa.Stat.Ann. tit. 35 § 691.602 (Purdon Supp.1986). None of these statutes provide a lessor with the remedy of ejectment against a lessee who violates them.

 Noting that the lease is silent on the question and that the statutes do not provide an ejectment remedy for the lessor, we examine the law applicable to the instant case. A lease is in the nature of a contract and is controlled by principles of contract law. *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979). If the rights, duties and remedies of the lease are to be extended beyond the clear meaning of the lease, the burden is on the party so claiming to show that the parties intended such extension either by provisions of the contract or by implication. *Harnish v. Shannon*, 12 Pa. D. & C.2d 54, 60, 64 (1957), *aff'd*, 392 Pa. 419, 141 A.2d 347 (1958) (per curiam).

 The Rosses argue that under the common law a tenant's use of leased premises in violation· of the law justifies termination of the lease and permits the lessor to eject the tenant. In essence they argue that under common law Gulf has breached the lease. We do not agree.[1]

The Rosses rely on *Burke v. Bryant*, 283 Pa. 114, 128 A. 821 (1925). The *Burke* case was decided by the Pennsylvania Supreme Court during the prohibition era and involved tenants whose activity on the premises violated the National Prohibition Act commonly known as the "Volstead Act", ch. 85, 41 Stat. 305 (1919) (repealed ch. 740, 49 Stat. 872 (1935)). The Court affirmed the termination of the lease because the Volstead Act itself contained a provision permitting a landlord to terminate a lease for violation of the act. We emphasize that the determinative factor in *Burke* was the forfeiture provision of the Volstead Act. The Court did not consider whether in the absence of a statute providing for forfeiture the landlord could eject a tenant for unlawful activity. The holding in *Burke* is therefore inapposite.

The Rosses urge us to rely on dicta in *Burke* to affirm their position:

> If violators of the law were permitted to remain in possession, enforcement would be rendered increasingly difficult, whereas if the premises are returned, the maintenance of the public morality is secured. It is very important that a lawless occupant should be completely ejected by a law-abiding lessor.

283 Pa. at 119, 128 A. at 823.[2]

 We decline to rely on this quoted dicta and note that it is not stated as an independent proposition of law but in support for the Court's conclusion affirming the Court's

1. The common law has implied a covenant in a lease and then permitted forfeiture upon breach only in a very narrow factual context; that is when the lessee denies title in the lessor. *Institute of Protestant Deaconess v. Lingenfelser*, 296 Pa. 493, 146 A. 123 (1929), *Jones v. Stiffler*, 137 Pa.Super. 133, 8 A.2d 455 (1939). We do not find this proposition of law applicable.

2. The *Burke* dicta is supported by Restatement (Second) of Property, § 12.5(1) (1977).

termination of the lease based on the violation of the Volstead Act. The parties to a lease must be able to rely on the terms for which they bargained in an arms-length transaction. The lease in the instant case is not a form lease, but an individually tailored and negotiated document. For example, the Rosses desired to protect themselves against damages caused by Gulf on the premises. They therefore negotiated a hold harmless clause. If they desired to protect themselves from unlawful activity on the part of Gulf, they could have made provision therefor in the lease agreement. *See Wissahickon Realty Corp. v. Boyle,* 385 Pa. 198, 122 A.2d 720 (1956).

■ If the lease is silent as to the consequence of unlawful activity, neither party should be able to point to the violation to support their voiding the lease unless a statute or ordinance so provides. If a landlord could eject a tenant for every violation of the law, then a landlord could purposefully seek out a tenant's minor infraction in order to eject one tenant in favor of a prospectivee, perhaps higher paying tenant. For example, a tenant who failed to shovel snow from his sidewalk would be subject to ejectment. Or the landlord could threaten ejectment as a coercive ploy in the renegotiation of an option to lease, thereby procuring more favorable terms for himself. A tenant, especially one who makes considerable improvements on his property, could lose the bargain of the lease if he could be ejected for an infraction of the law, however minor.

Since the building on the property reverts to the Rosses upon termination of the lease, ejectment would permit the Rosses to obtain the service station built by Gulf years before Gulf's last option expired. The Rosses could then rent the premises with the service station and would perhaps be in a position to receive a windfall.

■ We note that we do not leave the Rosses without a remedy. *See 202 Marketplace v. Evans Products Co.,* 593 F.Supp. 1133 (E.D.Pa.1984). They have remedies specified in the lease including remedies for damages based on the "save harmless" clause in the lease. Protected by the

"save harmless" clause, the Rosses will not ultimately suffer damages from any required pollution clean-up. They also may pursue statutory remedies such as the remedy in Pa.Stat.Ann. tit. 35 § 691.601 (Purdon 1977), which provides that if the Department of Environmental Resources fails to act, a person having an interest adversely affected by the violation of the statute may commence judicial action against the violator in order to abate the nuisance or against the Department of Environment Resources to compel enforcement.

Order affirmed.