561 A.2d 1268

In re Estate of Robert P. FIKE, Deceased.

Appeal of Evelyn R. FIKE and Pittsburgh National Bank, Executors of the Estate of Louis S. Fike, Deceased, and

Appeal of GALLATIN NATIONAL BANK, Administrator D.B.N., C.T.A. of the Estate of Robert P. Fike, Deceased.

Superior Court of Pennsylvania.

Submitted April 3, 1989.

Filed July 17, 1989.

Henry R. Beeson, Uniontown, for Evelyn R. Fike and Pittsburgh Nat. Bank, appellant.

John R. Hoye, Jr., Uniontown, for Gallatin Nat. Bank, appellant. Melvin B. Bassi, Washington, for Purco Coal, Participating Party.

Before CIRILLO, President Judge, and OLSZEWSKI and WATKINS, JJ.

OLSZEWSKI, Judge:

This is an appeal from a final decree entered by the Court of Common Pleas of Fayette County which served to interpret certain provisions of a coal mining lease by and between Purco Coal Company ("Purco") as lessee and Louis S. Fike, Executor of the Estate of Robert P. Fike, deceased (successor in interest being Gallatin National Bank, Administrator d.b.n.c.t.a. of the Estate of Robert P. Fike, deceased), and Louis S. Fike, individually (now deceased, his successors in interest being Evelyn R. Fike and Pittsburgh National Bank, Executors of the Estate of Louis S. Fike, deceased), as lessors ("lessors").

On December 8, 1982, Purco and lessors entered into a coal mining lease. Following, the Orphan's Court of Fayette County approved the execution of the lease. Paragraph 3 of the lease required Purco to promptly apply to the Pennsylvania Department of Environmental Resources for certain mining and drainage permits. Purco complied, and, in accordance with paragraph 4 of the Lease, paid $50,000 as an advance royalty. In pertinent part, paragraph 4 provides:

As an advance royalty, Purco shall pay Lessor the sum of $50,000 on the effective date of this agreement, which sum shall be held in escrow by Lessor's attorneys ... [T]he advance royalty and any accrued interest shall be paid to Lessor on the permit approval date; *and the advance royalty* (but not the interest) *shall be applied to the first tonnage royalties due Lessor from Purco for coal mined and removed during the lease year beginning on the permit approval date. If the advance royalty exceeds the tonnage royalty during that year, the excess shall be retained by Lessor.*

On April 1, 1985, Purco obtained its mining and drainage permits, but, due to other procedural mandates, was unable to actually mine and remove coal until January 8, 1986, when compliance with said mandates was achieved. Thereafter, on January 7, 1987, Purco made a second escrow deposit of $50,000, which it again characterized as advance royalty. This deposit, although not actually required, was made by Purco since it had not actually begun to mine and remove coal. The lessors characterized the payment as a minimum tonnage royalty which is addressed in paragraph 5 of the lease. In pertinent part, paragraph 5 provides:

For each ton of 2,000 pounds of coal mined and removed from the premises, Purco shall pay Lessor a tonnage royalty of $2.75. Payment for all coal mined and removed during any calendar month shall be made not later than the 15th day of the following month. *If the tonnage royalties beginning on an anniversary of the permit approval date or during any renewal year is less than*

*$50,000, Purco shall pay Lessor the amount of the deficiency not later than 15 days after the end of such lease year or renewal year.*

Due to this discrepancy, Purco filed a petition for declaratory judgment asking the trial court to interpret the relevant provisions of the lease. Specifically, Purco asked the court to determine the definition of the "permit approval date," and to determine whether the advance payments made by Purco constituted minimum royalties or advance payments which should be applied at the end of the lease term against tonnage actually mined by Purco.

Following an evidentiary hearing, the trial court determined that the permit approval date was April 1, 1985, as was argued by lessors, and that the advance payments made by Purco were recoupable against later tonnage royalties, as was argued by Purco. In response, lessors filed exceptions to the trial court's latter determination. No exceptions were filed to contest the permit approval date.

Thereafter, pursuant to a hearing on the exceptions, the trial court entered a final decree in which its initial determinations were affirmed. In response, the lessors filed the instant appeal.

On appeal, the lessors contend that the trial court erred in holding that the advance payments made by Purco were recoupable against later tonnage royalties. Specifically, the lessors argue that the terms of the lease unambiguously provide that the advance royalty was to be applied to the tonnage royalties for coal mined and removed during the lease year, which began on the permit approval date and ended on March 31, 1986. In furtherance, lessors argue that paragraph 4 provides that if the advance royalty is greater than the tonnage royalty during that first lease year, they may retain the excess. Accordingly, lessors contend that the advance royalty is not recoupable against tonnage royalties obtained in years subsequent to the initial lease year.

In addition, lessors direct our attention to paragraph 5, which states that if the tonnage royalties for coal mined and

removed during any lease year, beginning on an anniversary date of the permit approval date or during any renewal year, is less than $50,000, Purco must pay the amount of the deficiency not later than 15 days following the end of such lease year or renewal year. As such, lessors contend that they are due such minimum royalty on the 15th day of April of each year, commencing on April 15, 1987. Lessors contend that said payment is not contingent upon the actual occurrence of mining activity.

Finally, due to the contested unambiguous nature of the contract, lessors argue that the trial court erred in introducing extrinsic evidence to aid in the interpretation of the lease. Said evidence included custom and usage in the coal mining industry.

Initially, we note that since the lessors are asking this Court to disturb a determination of the trial court, they must first demonstrate that the trial court abused its discretion or committed an error of law in making said determination. *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987). With this in mind, we may address the thrust of the lessors' arguments.

A lease is a contract and is to be construed through the utilization of contract principles. *Ross v. Gulf Oil Corp.*, 361 Pa.Super. 228, 522 A.2d 97 (1987). In construing such a lease, the intent of the parties is a primary consideration. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). Where the terms of the lease are clear and unambiguous, the intent of the parties is to be derived from the lease itself. *Id.* Where the lease is ambiguous, however, evidence of custom and usage is admissible to aid in the interpretation of the language. *Id.*

Accordingly, this Court must initially determine whether the terms of the lease are ambiguous, thereby warranting the use of extrinsic evidence. A contract is ambiguous if reasonably intelligent persons would differ as to its meaning. *Musisko v. Equitable Life Ins. Co.*, 344 Pa.Super. 101, 496 A.2d 28 (1985). The court, as a matter

of law, determines whether the provisions of a lease are clear or ambiguous. *Koval v. Liberty Mutual Insurance Co.*, 366 Pa.Super. 415, 531 A.2d 487 (1987). Thereafter, the resolution of conflicting extrinsic evidence offered to determine the parties' intent is within the province of the trier of fact. *Walton v. Philadelphia National Bank*, 376 Pa.Super. 329, 545 A.2d 1383 (1988).

■ Upon review of the record, we are constrained to agree with the trial court's determination that the terms of the lease are ambiguous. The lease clearly provides that Purco is obligated to pay the lessors $50,000 per year. The lease is ambiguous, however, as to when the payment of minimum tonnage royalties was to commence.

Specifically, the lease provides that such payments should commence when the coal is actually mined and removed. In addition, however, the lease provides that the payments must begin on the permit approval date. As such, where the permit approval date is tolled but where the lessee is unable to actually mine and remove coal due to circumstances beyond its control, a conflict arises as to when the payments for minimum tonnage royalties should commence. Clearly, this language created an ambiguity which may be alleviated through the introduction of extrinsic evidence. Accordingly, the trial court did not err in determining that the lease contained ambiguous language and in allowing the introduction of extrinsic evidence to aid in the interpretation of the ambiguity.

■ Thereafter, the trial court appropriately acted as fact-finder in interpreting the ambiguous provisions. A review of the record reveals that Purco offered the uncontradicted testimony of three expert witnesses. In sum, these witnesses testified that pursuant to custom and usage in the Pennsylvania coal industry, advance royalty payments are to be recouped at some point during the lifetime of the mine. Thereafter, based upon this testimony, the contents of the lease, and the fruit of well-reasoned questions asked by the trial court, a decision was rendered in favor of Purco.

Clearly, this decision was based upon the trial court's determination that advance royalties are separate and apart from minimum tonnage royalties and that, unless the lease specifically provides otherwise, the latter is not recoverable until mining is commenced. Up until that point, advance royalties are payable, and subsequently recoverable, against minimum tonnage royalties. As such, the trial court determined that the payments made by Purco constituted advanced royalties and were recoupable against subsequent minimum tonnage payments.

In contrast, the lessors argue that pursuant to *Pittsburgh National Bank v. Allison Engineering Co.*, 279 Pa.Super. 442, 421 A.2d 281 (1980), which held that minimum tonnage royalties constitute a penalty and, as such may not be recouped against tonnage royalties unless the lease specifically provides otherwise, the instant result is unwarranted. In *Hutchison, supra,* however, the Pennsylvania Supreme Court specifically addressed *Pittsburgh National* and, in doing so stated that its implication of a duty to mine in the face of a minimum advance royalty was improper. As such, *Hutchison* held that the courts should look to the terms of the lease and not automatically determine that minimum advance royalties are not recoupable against minimum tonnage royalties based upon the implied duty to mine. In addition, however, *Pittsburgh National* also stated that an advance royalty does not imply a right of recoupment. Nevertheless, since the lease provisions of the instant case specifically provided that the advance royalty was to be applied to the first tonnage royalties, the cases are distinguishable.

Instantly, upon review of the record, the applicable case law and the solid determinations of the trial court, we find that the trial court did not abuse its discretion in making its determinations. As such, we affirm its decision to recoup the minimum advance payments tendered by Purco against subsequent minimum tonnage payments, payable when Purco was able to actually mine and remove coal.

634

Accordingly, we affirm the decision of the trial court. Decree affirmed.